IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Markus M. Hall, Monique G. Rankin, Lindsey K. Sanders,<br><br>    Plaintiffs,<br><br>    v.<br><br>City of Fairfield, Nick McDowell, Chris Grimm, Tom Shackford, Zack Sandoval, Steve Crane,<br><br>    Defendants. | 2:10-cv-0508-GEB-DAD<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

        Pending are cross summary judgment motions on each Plaintiff's federal Fourth Amendment unlawful arrest claim alleged against Defendants Officer Nick McDowell, Officer Chris Grimm, Officer Tom Shackford, Officer Zack Sandoval, and Sergeant Steve Crane, (collectively "Defendant Officers"); and on each Plaintiff's Fourth Amendment unlawful arrest claim alleged against the City of Fairfield under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978) ("<u>Monell</u>"). (Plaintiffs' Motion for Summary Judgment ("P MSJ"), ECF No. 48; Defendants City of Fairfield, Officers Nick McDowell, Christopher Grimm, Tom Shackford, Zachary Sandoval and Sergeant Steve Crane's Motion for Summary Judgment ("D MSJ"), ECF No. 66.)

        Further, Defendants seek summary judgment on the following claims: Plaintiff Markus Hall's federal Fourth Amendment excessive force

1

claim alleged against Defendant Officers; and each Plaintiff's claims alleged under Civil Code sections 51.7 and 52.1.

Each Defendant Officer also argues his federal qualified immunity defense shields him from exposure to liability for Plaintiff's federal false arrest claim; and that California Government Code section 821.6 shields him from exposure to liability for Plaintiffs' state false arrest and battery claims.

Further, Plaintiffs voluntarily dismissed the following claims in their opposition to the summary judgment motion and during the hearing on the motions: each Plaintiff's intentional infliction of emotional distress claim; Plaintiff Monique Rankin's federal Fourth Amendment excessive force claim; and Plaintiff Monique Rankin's state battery claim. Therefore, these claims are dismissed.

This case concerns the citizen's arrests of Plaintiffs Markus Hall, Monique Rankin and Lindsey Sanders on July 4, 2009 for violation of California Penal Code section 602.1, made by In-N-Out Restaurant Manager Marc Young under California Penal Code section 837. Section 837 allows "[a] private person [to] arrest another . . . [f]or a public offense committed or attempted in his presence." Each Plaintiff was taken into custody pursuant to this citizen's arrest by a City of Fairfield Police Department officer or officers, and was also arrested under California Penal Code section 148 due to their failure to comply with officers' directions to leave the premises.

### I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect

the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust and Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party's initial burden "may be met by . . . pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Fairbank v. Wunderman Cato Johnson, 212 F.3d 528 (9th Cir. 2000) (internal quotation and citation omitted).

If the movant satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). The "non-moving [party] cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (citation and internal quotation marks omitted).

Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed

facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment, . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010) (citation and internal quotation marks omitted).

Evidence must be "view[ed] . . . in the light most favorable to the non-moving party[,]" and "all reasonable inferences" that can be drawn from the evidence must be drawn "in favor of [the non-moving] party." Nunez v. Duncan, 591 F.3d 1217, 1222-23 (9th Cir. 2010) (quoting Bank of N.Y.C. v. Fremont Gen. Corp., 523 F.3d 902, 909 (9th Cir. 2008)).

## II.   SUMMARY OF UNCONTROVERTED FACTS

"On July 4, 2009, at approximately 12:55 a.m., Plaintiffs . . . arrived at an In-N-Out Burger restaurant located at 1364 Holiday Lane, Fairfield, California." (Plaintiffs' Statement of Undisputed Facts in Support of Motion for Summary Adjudication ("P SUF") No. 1, ECF No. 50.) "Prior to Plaintiffs arriving at the restaurant, at approximately 12:54 a.m., the manager of the restaurant, . . . MARC L. YOUNG ("Young"), had called the Fairfield Police Department to report a disturbance at the restaurant by a group of African Americans who were acting 'rowdy and throwing food around.' The call was logged by the Fairfield Police Department at '12:54:50 AM.'" (P SUF No. 2.) "At approximately 12:55 a.m., the Fairfield Police Department dispatched officers to the restaurant[, t]he . . . dispatch report described black

4

males and black females throwing food around and refusing to leave – 'BM's AND BF's' 'THROWING FOOD AROUND' 'REF TO LEAVE.'" (P SUF No. 3.)

"At approximately 12:59 a.m., . . . Defendants NICK McDOWELL ("McDowell"), CHRIS GRIMM ("Grimm"), TOM SHACKFORD ("Shackford"), and ZACK SANDOVAL ("Sandoval") . . . entered the restaurant." (P SUF No. 5.) "When the officers arrived, Officer McDowell spoke . . . to Young who, according to Officer McDowell, stated words to the effect that 'there was a disturbance, there was a lot of people in the restaurant.'" (P SUF No. 5.) "Young then proceeded to the table where Plaintiffs were seated and, pointing his fingers toward the counter and the door, told them that they had to 'order or leave.'" Id. "In-N-Out Manager Marc Young requested the City of Fairfield officers remove Plaintiffs from the In-N-Out property." (Defendants City of Fairfield, Officers Nick McDowell, Christopher Grimm, Tom Shackford, Zachary Sandoval and Sergeant Steve Crane's Separate Statement in Support of Motion for Summary Judgment or, in the alternative, Summary Adjudication ("D SUF") No. 13, ECF No. 66-1.)

"Defendant officers approached Plaintiffs inside the In-N-Out Restaurant and requested they voluntarily leave, with that request repeated multiple times." (D SUF No. 13; P SUF No. 6.) "The officers did not explain to Plaintiffs why they were being told to leave, did not respond to Plaintiffs when they asked why they were being told to leave and, although there were a number of employees and patrons at the restaurant, the officers did not inquire of any of them if Plaintiffs had been interfering, obstructing or intimidating anyone at the restaurant." (P SUF No. 6.) "At approximately 1:00 a.m., . . . Plaintiffs got up from their chairs and left the restaurant[,]" and traveled into the parking lot. (P SUF No. 7; D SUF No. 17.)

"At approximately 1:02 a.m., the officers left the restaurant and approached Plaintiffs, who were now standing near the car they had arrived in, while they waited for the two members of their group who were inside ordering." (P SUF No. 8.) "Defendant officers approached Plaintiffs in the parking lot and again requested they leave the premise[s], with the Officers' request for Plaintiffs to leave being repeated multiple times." (D SUF No. 19.)

Sergeant Crane did not arrive on the premises until after Plaintiffs and the other Defendant Officers had exited the restaurant. (P SUF No. 9.) Plaintiffs were arrested for violations of California Penal Code sections 602.1(a) and 148(a)(1). (P SUF No. 9; D SUF No. 22.) In-N-Out Manager Marc Young signed a "Citizens Arrest Statement" included in the Arrest Report for each Plaintiff's arrest which stated the following: "I hereby arrest the above person on the charge indicated herein and request a peace officer to take him/her into custody." (Declaration of Garret D. Murai in Support of Plaintiffs' Motion for Summary Adjudication ("Murai Decl.") Ex. E, Arrest Reports of Monique Rankin, Markus Hall and Lindsey Sanders pp. 000403-000410, ECF No. 56-2.) "Plaintiffs' arrest . . . [under] Penal Code Section 148 [was] due to their failure to comply with the officers' official directions to leave the premise[s] . . . ." (D SUF No. 21.)

### III. DISCUSSION

**A. Fourth Amendment Unlawful Arrest Claim against Defendant Officers**

Plaintiffs and Defendant Officers cross move for summary judgment of each Plaintiff's federal unlawful arrest claim against each Defendant Officer. Further, each Defendant Officer seeks summary judgment on his qualified immunity defense.

Defendant Officers argue that "the situation encountered by

6

the officers on the night in question, together with each officer's independent observations, confirms probable cause existed to arrest each Plaintiff." (D MSJ 12:26-26.) Further, Defendants argue that "[s]hould this Court determine that the officers did not have probable cause to proceed with Plaintiffs' arrest" they are shielded from liability from the federal unlawful arrest claims because "even if the officers were mistaken about having probable cause to arrest . . . to the extent that their response was reasonable, they are entitled to qualified immunity." (D MSJ 16:25-28, 17:1-4; 18:3-4.)

Plaintiffs argue that "because none of the [Defendant] officers 'independently investigated' the alleged violation underlying Young's citizen's arrest [for trespassing], none of the officer[s] had probable cause to arrest Plaintiffs." (P MSJ 10:26-28.) Plaintiffs also counter each Defendant Officer's qualified immunity argument by arguing that "the law was clear at [the time of the arrests] that statements from a witness, without further investigation by the police were insufficient to support probable cause[,]" and therefore "Defendants cannot contend that the officers were unaware that an independent investigation was required by the [Fourth] Amendment." (Plaintiffs' Opposition to Defendants' Motions for Summary Judgment ("P Opp'n") 20:22-24; 21:7-8, ECF No. 82.)

**I.   Probable Cause**

The citizen's arrest by Mr. Young of each Plaintiff was for a violation of California Penal Code Section 602.1(a). This statute prescribes:

> Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of

7

          the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor . . . .

"[A] violation of § 602.1 has two elements: (1) intentional interference, and (2) refusal to leave." Dubner v. City and Cnty. of San Francisco, 266 F.3d 959, 966 (9th Cir. 2001).

      "[T]he federal Constitution requires police officers to have independent probable cause when effectuating a citizen's arrest." Hopkins v. Bonvicino, 573 F.3d 752, 774 (9th Cir. 2009). "In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the [citizen's] knowledge or interview other witnesses." Arpin v. Santa Clara Valley Trans. Agency, 261 F.3d 912, 925 (9th Cir. 2001). "A sufficient basis of knowledge is established if the [citizen] provides 'facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.'" Peng v. Hu, 335 F.3d 970, 978 (9th Cir. 2003) (quotation omitted).

      The City of Fairfield police officers argue that Mr. Young provided them with sufficiently detailed information that caused them to reasonably believe that Plaintiffs had violated the "intentional interference" prong of section 602.1(a), and rely on the following asserted undisputed facts in support of this argument: "In-N-Out Manager Marc Young told the officers that Plaintiffs group was refusing to leave the restaurant, were argumentative with In-N-Out staff, were not ordering food, throwing items around the restaurant and being a general disruption." (D SUF No. 12.) However, Plaintiffs counter Defendants evidence concerning what Mr. Young said to a police officer by citing the deposition testimony of Mr. Young in which he answered "No" to the

8

following questions: "[D]id you have a conversation with an officer about what [Plaintiffs] had done prior to the time that the officers arrived[;]" "Did any officer ask you to give them any detail about what [Plaintiffs] had done[;]" and "before the officers arrived, you're not aware of anything that [Plaintiffs] had done, are you?" (Declaration of Garret D. Murai in Support of Plaintiffs' Reply, Ex. A 36:10-24, ECF No. 73-1.)

Because of the factual dispute concerning what Mr. Young told a Fairfield police officer, triable issues of fact exist concerning whether probable cause existed to arrest Plaintiffs. Therefore, each motion on each Plaintiff's federal unlawful arrest claims is denied.

### ii. Qualified Immunity

However, each officer also seeks decision on his qualified immunity defense. "In the context of an unlawful arrest . . . the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." Rosenbaum v. Washoe Cnty., - - - F.3d - - -, 2011 WL 5966207, at *3, 2011 U.S. App. LEXIS 23804, at *9 (9th Cir. Nov. 30, 2011). The focus of the qualified immunity analysis here is on the second prong of the analysis, since under this prong "[e]ven if the arrest is made without . . . probable cause, . . . the officer may still be immune from suit if it was objectively reasonable for him *to believe* that he had probable cause." Id. at *5, *14 (emphasis in original). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). "Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." Rosenbaum, - - - F.3d - - -, 2011 WL 5966207, at *6, 2011 U.S. App. LEXIS 23804, at *15. Further, "[w]here an officer has an objectively reasonable, good faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous." Motley v. Parks, 432 F.3d 1072, 1082 (9th Cir. 2005). "The linchpin is whether the officer's reliance on the information was objectively reasonable." Id. (citation omitted).

Plaintiffs state in their statement of undisputed facts: "The officers, who were later joined by Sergeant Crane, were directed by Sergeant Crane to arrest Plaintiffs based solely on information Sergeant Crane had received from Officer McDowell." (P SUF No. 9.) Plaintiffs cite Defendant Sergeant Crane's following deposition testimony in support of these undisputed facts:

> The general statement that Officer McDowell gave me when I initially arrived on scene is that management had pointed out [Plaintiffs] as being part of the original disturbance that we were called for, that Mr. Young had asked them to leave in [McDowell's] presence, [Plaintiffs] refused, and that the officers had asked them to leave multiple times and they refused to do so.
>
> Officer McDowell relayed to me that Mr. Young was willing to make a citizen's arrest and wished to do so if [Plaintiffs] refused to leave the premises for criminal trespass.

(Murai Decl. Ex. K, Sergeant Crane Deposition, 65:21-25, 66:1-2; 76:3-6.) Plaintiffs also cite Defendant Officer Grimm's deposition testimony in support their statement of undisputed facts concerning what Officer McDowell told Sergeant Crane, in which Officer Grimm testified that

10

after Sergeant Crane arrived on scene and spoke with Officer McDowell, Sergeant Crane "told [Grimm] and the other officers to take [Plaintiffs] into custody." (Murai Decl. Ex. H, Officer Grimm Deposition 39:4-12.) This evidence supports drawing the inference that Sergeant Crane reasonably relied on the information he received from Officer McDowell when he ordered the arrests of Plaintiffs, and that the Defendant Officers, except Officer McDowell, reasonably relied on Sergeant Crane's order to arrest Plaintiffs. Although a genuine issue of material fact exists concerning what Mr. Young said to Officer McDowell, that factual dispute does not controvert Sergeant Crane's testimony concerning what he testified Officer McDowell told him. The information Sergeant Crane testified he received from Officer McDowell is sufficient for Sergeant Crane to have had an arguable objective reasonable *belief* that he had probable cause to arrest each Plaintiff for the charged offenses. Further, since it is uncontroverted that the arrests were made pursuant to this belief, the following Defendant Officers are granted summary judgment on their qualified immunity defense against each Plaintiff's federal unlawful arrest claim: Grimm, Shackford, Sandoval and Sergeant Crane.

**B.   Liability of City of Fairfield under Monell**

Plaintiffs and the City of Fairfield each move for summary judgment of Plaintiffs' Monell claim.

Under Monell, "[m]unicipalities are considered persons under 42 U.S.C. § 1983 and thus may be liable for a constitutional deprivation." Waggy v. Spokane Cnty. Washington, 594 F.3d 707, 713 (9th Cir. 2010) (internal quotation marks omitted). However, "it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." Id.

11

1          The City of Fairfield argues that "[b]ased on the facts
2 alleged in Plaintiffs' Complaint, as well as their verified responses to
3 discovery, there is no basis for a <u>Monell</u> claim against the City,
4 thereby requiring the City to be dismissed." (D MSJ 12:3-5.) The City of
5 Fairfield contends it "served Plaintiffs with precise discovery requests
6 which required Plaintiffs to identify the exact policy allegedly causing
7 or contributing to the alleged unlawful actions." (D MSJ 11:23-24.)
8 Plaintiffs responded that "Defendant officers . . . violated the
9 Fairfield Police Department's Code of Professional Conduct and
10 Responsibilities for Peace Officers and General Orders." (Decl. of Kevin
11 E. Gilbert in Support of Defendants Motion for Summary Judgment
12 ("Gilbert Decl.") Exs. C, F, H, each Plaintiff's Response to the City's
13 Interrogatory No. 21.) The City of Fairfield's argument in its motion is
14 sufficient to satisfy its "initial burden of establishing the absence of
15 a genuine issue of material fact" since it  "show[s]—that is, point[s]
16 out to the district court—that there is an absence of evidence to
17 support the nonmoving party's case[.]" <u>Fairbank v. Wunderman Cato
18 Johnson</u>, 212 F.3d 528, 531 (9th Cir. 2000) (internal citations omitted).
19          Plaintiffs argue that "[t]he City of Fairfield is liable for
20 . . . the ratification of the officers' actions by the Fairfield Police
21 Department's Chief of Police." (P MSJ 14:16-20.) Under this theory of
22 <u>Monell</u> liability, "[a] municipality . . . can be liable for an isolated
23 constitutional violation if [a] final policymaker 'ratified' a
24 subordinate's actions." <u>Christie v. Iopa</u>, 176 F.3d 1231, 1238 (9th Cir.
25 1999). "To show ratification, a plaintiff must prove that the
26 'authorized policymakers approve a subordinate's decision and the basis
27 for it.'" <u>Id.</u> at 1239 (quoting <u>St. Louis v. Praprotnik</u>, 485 U.S. 112,
28 127 (1988).

1          Plaintiffs argue that "the recommendation of the [Fairfield
2 Police Department's Internal Affairs] investigator as to each Defendant
3 officer's [alleged] violation of the Fairfield Police Department's
4 Policy and Procedure No. 4155 – Citizen's Arrest – was to exonerate each
5 Defendant officer[, and] . . . [e]ach of the Defendant officers were
6 later 'exonerated' by the former Chief of Police of the Fairfield Police
7 Department, Walter Tibbett." (P MSJ 13:25-28, 14:6-7.) However,
8 Plaintiffs have not presented evidence from which it could be reasonably
9 inferred that the Chief of Police's exoneration of Defendant Officers
10 based on the version of the facts presented in the Internal Affairs
11 investigation report was improper. See Koenig v. City of Bainbridge
12 Island, No. C10-5700 RJB, 2011 WL 3759779, at *9, 2011 U.S. Dist. LEXIS
13 95607, at *25-26 (W.D. Wash. Aug. 25, 2011) (finding the Chief's
14 "agreement with the independent findings that the allegations were
15 'unsubstantiated,' does not rise to the level of ratification of [the
16 officers'] alleged unconstitutional conduct. In other words, [the Chief]
17 did not ratify unconstitutional or wrongful conduct; he ratified conduct
18 he reasonably believe to be appropriate under the circumstances.").
19          Therefore, the City of Fairfield's motion for summary judgment
20 on each Plaintiff's Fourth Amendment unlawful arrest claims alleged
21 under Monell is granted and Plaintiffs' summary judgment motion on these
22 claims is denied.
23 **C.   Plaintiff Hall's Fourth Amendment Excessive Force Claim**
24          Defendants seek summary judgment on Plaintiff Hall's excessive
25 force claim. Defendants argue that "the 'force' used [on Plaintiff Hall]
26 amounted to . . . Officer Sandoval placing his knee on Hall's lower or
27 middle back for less than 10 seconds while he was being handcuffed [,
28 and that s]uch conduct . . . is clearly appropriate and objectively

13

reasonable." (D MSJ 16:12-15.) Plaintiff Hall counters that there is a factual dispute concerning the force used because "Hall . . . was grabbed by the officer as he attempted to comply with [the officer's] instructions, was thrown to the ground and a knee placed in his back." (P Opp'n 25:8-11.)

"[T]he protections of the Fourth Amendment . . . guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. When analyzing an excessive force claim "the facts and circumstances of each particular case, . . . including whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight" are considered. Id. at 396.

Defendants and Plaintiff Hall cite the following portion of Defendant Sandoval's deposition testimony in argument on the motion:

> I went up to grab [Hall] by the left arm to place him in a rear wrist lock which is an arrest control technique that we use. As I went to go grab his right arm, I felt him start to pull his arm away from me. At that point, I placed him in an arm bar extension and I used a take down technique where you actually twist the arm to bring them to the ground to gain control and compliance over them.

(Gilbert Decl. Ex. E 97:6-14.) In addition, Plaintiff Hall declares in his declaration: "I was forced to the ground, my arms were grabbed and pulled behind my back, and handcuffs were placed on my wrists." (Decl. of Markus M. Hall in Support of Motion for Summary Adjudication ¶ 7.)

The undisputed facts and the evidence presented by Plaintiff Hall do not establish a triable issue of fact concerning the objective

14

reasonableness of Defendant Sandoval's use of a control hold and take down technique after Defendant Sandoval felt Plaintiff Hall start to pull his arm away from Defendant Sandoval. At that point, Defendant Sandoval placed Plaintiff Hall in an arm bar extension and used a take down technique. Since there is no evidence that Defendant Sandoval applied more force than necessary to restrain Plaintiff Hall while attempting to secure him in handcuffs, Defendant Sandoval's use of a control hold was objectively reasonable. See Tatum v. City and Cnty. of San Francisco, 441 F.3d 1090, 1096-97 (9th Cir. 2006) (stating summary judgment is appropriate when the reason for the officer's use of force was uncontroverted and clear, and "the record . . . does not permit the inference that [the officer's] use of force was unwarranted"). Therefore, Defendants' motion for summary judgment of Plaintiff Hall's excessive force claim is granted.

**D.   California Civil Code Sections 51.7 and 52.1**

Defendants move for summary judgment of each Plaintiff's claims alleged under California Civil Code section 51.7, arguing that Plaintiffs have not "establish[ed] wrongful conduct by each individual Defendant which was motivated by Plaintiffs' membership in a protected class[,]" as required for liability under section 51.7. (D MSJ 19:12-14.) Plaintiffs counter that they "have presented a prima faciae [sic] case by tendering evidence that each was a member of a protected class and that each was threatened with arrest, arrested and subjected to violent acts." (P Opp'n 22:20-22.)

California Civil Code section 51.7 prescribes "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their person . . . on account of [race.]"

1  Plaintiffs argue in their opposition brief "circumstantial
2 evidence" exists which is "sufficient to raise a triable issue as to
3 whether [Defendant Officers'] actions were taken because of
4 [Plaintiffs'] race." (P Opp'n 23:1-2.) However, the only reference to
5 race in Plaintiffs' evidence is the following: "The officers received a
6 report that 'BM's and BF's' were causing a disturbance[; t]he officers
7 arrived and saw African American males and females leaving the
8 restaurant[; and t]he surveillance video clearly shows that the vast
9 majority if not all persons leaving were African American." (P Opp'n
10 23:3-6.) Plaintiffs evidence is insufficient to support a reasonable
11 inference that "a motivating reason for [Defendant Officers' allegedly
12 unlawful] conduct was [their] perception of [Plaintiffs' race]." <u>Austin
13 B. v. Escondido Union School Dist.</u>, 149 Cal. App. 4th 860, 881 (2007)
14 (citing Judicial Council of California Civil Jury Instructions, CACI No.
15 3023A (formerly 3023)). Therefore, Defendants' motion for summary
16 judgment on Plaintiffs' claim alleged under California Civil Code
17 section 51.7 is granted.

18  Defendants also seek summary judgment of each Plaintiff's
19 claim alleged under California Civil Code section 52.1. California Civil
20 Code section 52.1 proscribes "interfere[nce] by threats, intimidation,
21 or coercion . . . with the exercise or enjoyment by any individual or
22 individuals of rights secured by the Constitution or laws of the United
23 States, or of the rights secured by the Constitution or laws of this
24 state[.]" "Civil Code section 52.1 does not extend to all ordinary tort
25 actions because its provisions are limited to threats, intimidation, or
26 coercion that interferes with a constitutional or statutory right."
27 <u>Venegas v. Cty. of Los Angeles</u>, 32 Cal. 4th 820, 843 (2004). Defendants
28 argue Plaintiffs have not "show[n] that Defendants interfered with or

16

attempted to interfere with Plaintiffs' state or federal rights by threatening to or committing violent acts[,]" proscribed by California Civil Code section 52.1. (D MSJ 19:15-19.)

Defendants argue they "served each Plaintiff with Interrogatory No. 22, which requested Plaintiffs identify the specific right that each Plaintiff contended the Defendant officers intentionally interfered with." (D MSJ 19:21-22.) Plaintiffs responded that they "were exercising their constitutionally protected right to be in the In-N-Out Burger restaurant, [and] to question Defendant officers . . . about why they were being asked to leave." Defendants have not sustained their burden of showing their that they are entitled to summary judgment of this claim; therefore this portion of the motion is denied.

**E.   Immunity under California Government Code Section 821.6**

Defendants also argue "Plaintiffs are precluded from prosecuting their [state false arrest and battery] causes of action based upon the complete defense provided by [California] Government Code Section 821.6." (D MSJ 18:20-22.) However, since Defendants have not shown that Section 821.6 confers immunity from the claims at issue, this portion of the motion is denied.

## IV.   CONCLUSION

For the stated reasons, the cross motions for summary judgment of each Plaintiff's Fourth Amendment unlawful arrest claim against each Defendant Officer is denied; Defendants Grimm, Sandoval, Shackford and Crane's motion for summary judgment of their defense of qualified immunity against each Plaintiff's federal unlawful arrest claim is granted; Defendant City of Fairfield's motion for summary judgment of Plaintiff's Fourth Amendment unlawful arrest claim alleged under <u>Monell</u> is granted and Plaintiffs' motion is denied; Defendants' motion for

summary judgment of Plaintiff Hall's Fourth Amendment excessive force claim is granted; Defendants' motion for summary judgment is granted on each Plaintiff's claim alleged under Civil Code section 51.7 and denied on each Plaintiffs' Civil Code section 52.1 claim; Defendant Officers' motion for summary judgment on Plaintiffs state battery and unlawful arrest claims is denied; and each Plaintiff's intentional infliction of emotional distress claim is dismissed, Plaintiff Monique Rankin's Fourth Amendment excessive force claim is dismissed, and Plaintiff Monique Rankin's state battery claim is dismissed.

Dated:   January 11, 2012

_____
GARLAND E. BURRELL, JR.
United States District Judge