1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARKUS M. HALL, MONIQUE G.              No.  2:10-cv-0508 DAD
     RANKIN, LINDSEY K. SANDERS,
12

13                Plaintiffs,               ORDER

14        v.

15   CITY OF FAIRFIELD, OFFICER NICK
     McDOWELL, OFFICER CHRIS GRIMM,
16   OFFICERS TOM SHACKFORD,
     OFFICER ZACK SANDOVAL, AND
17   SERGEANT STEVE CRANE,

18                Defendants.

19

20        This matter came before the court on July 12, 2013, for hearing of defendants' renewed

21   motion for judgment as a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure

22   50(b) or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a), and

23   motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).  (Doc. No.

24   216.)  The parties have previously consented to Magistrate Judge jurisdiction pursuant to 28

25   U.S.C. § 636(c).  (Doc. No. 175.)  Attorney Garret Murai appeared at the hearing on behalf of the

26   plaintiffs.  Attorney Kevin Gilbert appeared on behalf of the defendants.  Oral argument was

27   heard and defendants' motion was taken under submission.  For the reasons set forth below,

28   /////

                                          1

1    defendants' renewed motion for judgment as a matter of law or, in the alternative, for a new trial,

2    will be denied.[1]

3                                              BACKGROUND

4           Viewing the evidence in the light most favorable to the plaintiffs in whose favor the jury

5    returned the challenged verdict, and drawing all reasonable inferences in favor of the non-moving

6    party, as the court must, the evidence presented at the trial in this action is summarized as

7    follows.  On July 4, 2009, at approximately 12:55 a.m., Markus Hall ("Hall"), Monique Rankin

8    ("Rankin") and Lindsey Sanders ("Sanders") (collectively "Plaintiffs"), who are all African

9    American, arrived at an In-N-Out Burger fast food restaurant located in Fairfield, California,

10   along with Rankin's younger sister - Jasmine Rankin ("Jasmine"), the driver of their vehicle -

11   Lauren Johnson ("Lauren"), and Rachelle Smith ("Rachelle").

12          Just prior to the arrival of plaintiffs and their companions, the manager of the In-N-Out

13   Burger, Marc Young ("Young"), had reported to police a disturbance involving a group of young

14   African American males and females.[2]  At approximately 12:55 a.m. the Fairfield Police

15   dispatcher sent out the call "BM's [Black males] and BF's [Black Females]," "Throwing food

16   around," and "Ref [refusing] to leave."  When plaintiffs arrived at the restaurant Rankin's

17   younger sister, Jasmine, and Lauren (the driver of their vehicle) went to the counter to place their

18   order.  At approximately 12:56 a.m. plaintiffs sat down with Rachelle at a table near the entrance.

19          Immediately after plaintiffs sat down, at approximately 12:59 a.m., Fairfield Police

20   officers Nick McDowell, ("McDowell"), Chris Grimm, ("Grimm"), Tom Shackford

21   ("Shackford"), and Zack Sandoval ("Sandoval"), entered the In-N-Out Burger in response to

---

22   [1]  By the time trial commenced plaintiffs' claim that they were arrested without probable cause in
23   violation of the Fourth Amendment remained only against defendant Officer McDowell.
     However, with the concurrence of counsel for both parties the verdict form provided to the jury
24   framed plaintiffs' unlawful arrest claim as against "Defendants" generally in order to avoid
     confusing the jury.  Plaintiffs do not oppose defendants' request after trial to amend the judgment
25   to reflect that the judgment is only against defendant Officer McDowell.  Accordingly,
     defendants' motion to amend the judgment will be granted with respect to that issue and the
26   judgment is so amended.

27   [2]  It was undisputed at trial that plaintiffs were not part of the reported disturbance, but rather
28   arrived at the In-N-Out after any conduct precipitating Young's call to police had taken place.

                                                    2

Young's call.[3]  Young informed Officer McDowell there had been a disturbance inside and that because the dining area had gotten "out of control," he wanted those inside to either place an order or leave.  The officers did not ask Young what, if anything, the plaintiffs had done and conducted no other investigation of any kind.  The In-N-Out manager, Young, then walked to plaintiffs' table and quickly told them to "order or leave."  Plaintiffs attempted to explain that they had just arrived and were waiting for two other members of their group who were at the counter placing an order.  However, Young simply walked away from the table.[4]

As Young began to turn away from plaintiffs' table, Officer McDowell immediately approached plaintiffs and told them they had to leave.  Plaintiffs again explained that they had just arrived, were waiting for two members of their group who were at the counter ordering food and asked why they had to leave.  Officer McDowell told them it did not matter why they were being told to leave and that they were no longer welcome there.  Within one minute of McDowell ordering them to leave, plaintiffs got up from their chairs and began to exit.  Rachelle turned back and stated that she was going to the counter to place an order.  However, another officer prevented her from doing so by grabbing her arm and directing her towards the exit.[5]  Plaintiffs then exited the restaurant into the parking lot to wait for the other members of their group near the vehicle they had arrived in since Lauren, the driver, was still inside waiting for her order.

Once plaintiffs were outside, Officer McDowell asked Young if he would be willing to sign a citizen's arrest form for the plaintiffs and Young said he would.  Officer McDowell then returned to the parking lot and told plaintiffs that leaving the restaurant was not sufficient and that they had to leave the parking lot.  Plaintiffs were directed by the officers to leave the In-N-Out

---

[3]  A videotape introduced into evidence depicted that just as the officers entered, several young Black males and females who had been inside the In-N-Out Burger exited.

[4]  In response to the court's own questioning outside the presence of the jury, Young testified that he did not hear plaintiffs' explanation that two members of their group were at the counter ordering food and that had he realized such was the case, he would not have directed plaintiffs to leave since his purpose was to clear the dining room of any groups who were not ordering food or drink due to the dining area beginning to get "out of control" just before he called police.

[5]  By this time patrons at one table had become sufficiently concerned about the conduct of the police officers and what was occurring that one began filming the incident with a cell phone.

property completely and were instructed to "walk."  Plaintiffs declined, explaining that they had done nothing wrong and were waiting for the driver of the car who was still inside waiting for her food order.  Officer McDowell returned inside to have Young sign the citizen's arrests forms.  According to Young's trial testimony:  1) he did not recall Officer McDowell explaining the citizen's arrest forms to him; 2) he was not informed of what crime he was having plaintiffs arrested for when he signed the forms; and 3) he had not observed what, if anything, was occurring in the parking lot nor was he told that he needed to.  At approximately this point in the events, Fairfield Police Sergeant Steve Crane ("Crane") arrived at the In-N-Out Burger.  Officer McDowell briefed Sergeant Crane on the events and Crane ordered the officers to arrest the plaintiffs based solely on the information he had received from McDowell.  Officer McDowell arrested Rachelle Smith, Officer Grimm arrested Rankin, Sergeant Crane and Officer Shackford arrested Sanders and Officer Sandoval arrested Hall.  During these arrests plaintiff Hall was taken to the ground and plaintiff Sanders was thrown into the side of a police car.[6]

Plaintiffs were handcuffed and loaded into a police van which then drove to a nearby parking lot.  There, they were taken out of the van and photographed by police. After approximately a thirty minute delay, plaintiffs were transported to the county jail.  They were released at approximately 10:00 a.m. that morning.  Plaintiffs were charged with criminal trespass in violation of California Penal Code § 602.1(a) and resisting arrest under California Penal Code § 148(a)(1).  However, all criminal charges brought against plaintiffs were later dismissed.

Plaintiffs filed this civil rights action on March 2, 2010.  (Doc. No. 1.)  Through various pre-trial motions and rulings the action was eventually narrowed so that the case proceeded to trial only on the following claims:  false arrest without probable cause in violation of the Fourth Amendment against defendant McDowell; excessive use of force in violation of the Fourth Amendment against defendant Crane; and interference with plaintiffs' Constitutional or statutory rights in violation of California Civil Code § 52.1 against all defendants.

/////

---

[6]  The jury did not find in favor of plaintiff Sanders on her claim that Sergeant Crane used excessive force in arresting her.

1    The jury trial commenced on April 29, 2013.  At the conclusion of the evidence, counsel

2    for defendants made an oral JMOL motion pursuant to Rule 50(a) of the Federal Rules of Civil

3    Procedure.  (Doc. No. 193.)  At that time defense counsel argued that the evidence presented by

4    plaintiffs at trial established that there was probable cause supporting their arrest, that the

5    defendants were entitled to qualified immunity and that the defendants did not violate California

6    Civil Code § 52.1.  Defendants' JMOL motion was denied.  (Doc. No. 193.)

7    The jury was instructed and began its deliberations on May 7, 2013.  (Doc. No. 195.)  On

8    May 9, 2013, the jury returned its verdict finding that defendants violated plaintiffs' rights under

9    the Fourth Amendment by falsely arresting them without probable cause.  (Doc. No. 207 at 2.)

10   However, the jury did not find by a preponderance of the evidence that defendant Crane used

11   excessive force in arresting plaintiff Sanders and did not find by a preponderance of the evidence

12   that the defendants violated California Civil Code § 52.1.  (Id.)  In keeping with the jury's verdict,

13   judgment was entered on May 13, 2013.  (Doc. No. 209.)

14   Defendants filed their renewed JMOL motion pursuant to Rule 50(b) of the Federal Rules

15   of Civil Procedure on June 10, 2013.  (Defs.' Ren. Mot. for JMOL (Doc. No. 216).)  Plaintiffs

16   filed an opposition on June 28, 2013.  (Pls.' Opp.'n. (Doc. No. 217).)  Defendants filed a reply on

17   July 3, 2013.  (Defs.' Reply (Doc. No. 220).)

18                                            STANDARD

19   Rule 50(a)(1) of the Federal Rules of Civil Procedure provides as follows:

20           If a party has been fully heard on an issue during a jury trial and the
             court finds that a reasonable jury would not have a legally sufficient
21           evidentiary basis to find for the party on that issue, the court may:
             (A) resolve the issue against the party; and (B) grant a motion for
22           judgment as a matter of law against the party on a claim or defense
             that, under the controlling law, can be maintained or defeated only
23           with a favorable finding on that issue.

24   Federal Rule of Civil Procedure 50(b) governs renewed motions for judgment as a matter of law

25   made under Rule 50(a) and provides that the court may:  "(1) allow judgment on the verdict, if the

26   jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of

27   law."  The Ninth Circuit has held:

28   /////

1    A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion.  Rather, it is a renewed Rule 50(a) motion.

2    Under Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury.

3    If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may

4    renew its motion under Rule 50(b).  Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds

5    asserted in the pre-deliberation Rule 50(a) motion.  Thus, a party cannot properly "raise arguments in its post-trial motion for

6    judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion."  Freund v. Nycomed Amersham,

7    347 F.3d 752, 761 (9th Cir.2003) (citing Fed. R. Civ. P. 50 advisory committee's notes to the 1991 amendments ("A post trial motion

8    for judgment can be granted only on grounds advanced in the pre-verdict motion.")); Murphy v. City of Long Beach, 914 F.2d 183,

9    186 (9th Cir.1990) ("[Judgment notwithstanding the verdict] is improper if based upon grounds not alleged in a directed verdict

10    [motion]." (brackets in original)); see also Fed. R. Civ. P. 50 advisory committee's notes to the 2006 amendments ("Because the

11    Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.").

12    However, Rule 50(b) "may be satisfied by an ambiguous or inartfully made motion" under Rule 50(a).  Reeves v. Teuscher, 881

13    F.2d 1495, 1498 (9th Cir.1989).   Absent such a liberal interpretation, "the rule is a harsh one."  Nat'l Indus., Inc. v. Sharon

14    Steel Corp., 781 F.2d 1545, 1549 (11th Cir.1986).

15  E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).

16        In considering a Rule 50 motion, the court must view the evidence in the light most

17  favorable to the party in whose favor the jury returned a verdict and draw all reasonable

18  inferences in favor of the non-moving party.  First Nat. Mortgage Co. v. Federal Realty Inv.

19  Trust, 631 F.3d 1058, 1067 (9th Cir. 2011); Lakeside-Scott v. Multnomah County, 556 F.3d 797,

20  802 (9th Cir. 2009), cert. denied, 559 U.S.1067 (2010); Josephs v. Pacific Bell, 443 F.3d 1050,

21  1062 (9th Cir. 2006); City Solutions, Inc. v. Clear Channel Communications, Inc., 365 F.3d 835,

22  839 (9th Cir. 2004); see also A.D. v. California Highway Patrol, 712 F.3d 446, 453 (9th Cir.

23  2013) (when evaluating a Rule 50 motion the court should "give significant deference to the

24  jury's verdict and to the nonmoving parties").  "A district court can set aside a jury verdict and

25  grant JMOL only if, under governing law, there can be but one reasonable conclusion as to the

26  verdict and only if there is no legally sufficient basis for a reasonable jury to find for that party on

27  that issue."  Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146, 1155 (9th Cir. 2010)

28  (internal citation and quotation omitted).  See also A.D., 712 F.3d at 453 ("Such a judgment is

proper if the evidence, construed in the light most favorable to the nonmoving party, permits only

one reasonable conclusion, and that conclusion is contrary to the jury's verdict.") (quoting

Pavaov. Pagay, 307 F.3d 915, 918 (9th Cir. 2002)); First Nat. Mortgage Co., 631 F.3d at 1067-68

(A verdict is to be upheld if supported by substantial evidence, "even if it is possible to draw a

contrary conclusion" and the court "must disregard evidence favorable to the moving party that

the jury is  not required to believe, and may not substitute its view of the evidence for that of the

jury.") (quoting Pavao, 307 F.3d at 918); Lakeside-Scott, 556 F.3d at 802 ("Judgment as a matter

of law is proper when the evidence permits only one reasonable conclusion and the conclusion is

contrary to that reached by the jury.") (quoting Ostad v. Oregon Health Scis. Univ., 327 F.3d 876,

881 (9th Cir. 2003)).

## ANALYSIS

"[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a

claim for damages under § 1983." Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001)

(quoting Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir.1988)).  As the Ninth Circuit has

recognized, the federal standard for probable cause to arrest is as follows:

> "The test for whether probable cause exists is whether 'at the
> moment of arrest the facts and circumstances within the knowledge
> of the arresting officers and of which they had reasonably
> trustworthy information were sufficient to warrant a prudent
> [person] in believing that the petitioner had committed or was
> committing an offense.'"

Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007) (quoting United States v.

Jensen, 425 F.3d 698, 704 (9th Cir.2005) (citation omitted), cert. denied, 547 U.S. 1056 (2006)).

See also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1147 (9th Cir. 2012); Allen v. City of

Portland, 73 F.3d 232, 237 (9th Cir. 1995).

In the renewed motion for JMOL, defense counsel argues that defendant McDowell

cannot be held liable for violating plaintiffs' Fourth Amendment right to be free from arrest

without probable cause because plaintiffs had no constitutional right to remain at the In-N-Out

/////

/////

7

1   Burger.  (Defs.' Ren. Mot. for JMOL (Doc. No. 216) at 13.[7])  Specifically, defense counsel

2   argues that because plaintiffs did not have a constitutional right to remain at the In-N-Out Burger

3   after they were ordered to leave, their refusal to leave constituted a violation of law that was

4   committed in defendant McDowell's presence and which, in turn, provided the police officers

5   with probable cause to arrest plaintiffs.  (Defs.' Reply (Doc. No. 220) at 2-3.)[8]  Defense counsel

6   now, for the first time, relies upon the decision in James v. City of Long Beach, 18 F. Supp.2d

7   1078 (C.D. Cal. 1998), in support of this argument.[9]  The court finds defendants' argument

8   unpersuasive.

9        The plaintiff in James was the former owner of a local baseball franchise.  18 F. Supp.2d

10   at 1080.  After the plaintiff's ownership of the team ended, the team's new owners sought from

11   the City of Long Beach, who owned the team's stadium, the right to refuse any person entry into

12   the stadium, and "more particularly the team's right to exclude" plaintiff.  (Id.)  The parties in

13   James disputed whether the new owners' request was ever approved by the City.   In any event,

14   on August 7, 1996, the plaintiff purchased a game ticket and entered the stadium.  (Id.)  When the

15   team discovered plaintiff was in the stadium, a call was placed to the Long Beach Police

16
17   [7]  Page number citations such as this one are to the page number reflected on the court's CM/ECF
     system and not to page numbers assigned by the parties.

18
19   [8]  Although counsel argued this theory at trial, it was not the focus of the defense theory up until
     that time.  Rather, on summary judgment defendants primarily argued that probable cause to
20   arrest plaintiffs was founded upon the citizen's arrest forms signed by Young and by the plaintiffs
     obstruction of the officers in the attempt to discharge their duties.  (Doc. No. 66 at 21; Doc. No.
21   86 at 6.)  In their trial brief, defendants argued that probable cause existed based solely on the
     citizen's arrest forms signed by Young.  (Doc. No. 115 at 11-12.)  Indeed, at least in part in
22   response to such arguments the then-assigned District Judge sua sponte granted summary
     judgment in defendants' favor as to plaintiffs' state law false arrest claims, but not as to their
23   Fourth Amendment claim.  (Doc. No. 173.)  After the parties consented to Magistrate Judge
     jurisdiction over this action, defendants' theory continued to focus on their allegedly reasonable
24   reliance upon the citizen's arrest forms signed by Young.  (Doc. No. 180 at 8-10; Doc. No. 183 at
     3-5.)
25
26   [9]  As conceded at oral argument on the pending motion, defendants had never previously relied on
     or cited to the decision in James in any of their many pretrial motions, in their trial briefs or in
27   their arguments submitted in connection with their motion for JMOL at trial.  In any event, for the
     reasons explained herein the court finds the defendant's arguments based on the decision in James
28   to be unpersuasive in the context of this case even if properly presented in this renewed motion.

Department.  When the officers arrived, the team requested that the officers remove the plaintiff.  (Id. at 1081.)  A police officer told plaintiff that if he did not leave the stadium he would be arrested.  (Id.)  Rather than risk being arrested and spending the night in jail, plaintiff left the stadium escorted by the police officer.  (Id.)  Plaintiff later filed a civil action alleging claims for violation of his right to free speech under the First Amendment and his right to be free from unreasonable seizure under the Fourth Amendment.  (Id.)

In analyzing the defendants' subsequent motion for summary judgment as to plaintiff's Fourth Amendment claim, the court in James noted that the question at issue was whether the police officer "at the time of the seizure, had probable cause to believe that an offense had been committed by the person to be arrested."[10]  (Id. at 1084.)  The defendants' argued that the officer had probable cause to believe that the plaintiff, by not leaving the stadium when asked by the team, violated California Penal Code § 602(n).[11]  (Id.)  The version of Penal Code § 602(n) applicable at that time provided that the refusal to leave land belonging to another "and not open to the general public" upon being requested to leave by an officer or the owner constituted misdemeanor trespass.[12]  (Id. )

---

[10]  The defendants in James conceded that the plaintiff was seized when the officer informed him that he would be arrested if he did not leave the stadium.  18 F. Supp.2d at 1084.

[11]  Notably, it was California Penal Code § 602(n) that was at issue in James.  That is not the Penal Code provision upon which defendants rely in advancing their probable cause argument in this case.

[12]  At that time the provision in question provided that the following conduct constituted a misdemeanor trespass:

> Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession. The owner, the owner's agent, or the person in lawful possession shall make a separate request to the peace officer on each occasion when the peace officer's assistance in dealing with a trespass is requested. . . .

CAL. PENAL CODE § 602(n) (1998) (emphasis added).

1    The court in <u>James</u> found that under California trespass law in effect at the time, property

2    which was open only to ticket-buyers (such as the stadium at issue in that case) was property that

3    was "not open to the general public." (<u>Id.</u> at 1085.)  The court noted that in reviewing criminal

4    trespass convictions for entry onto public property, courts of other jurisdictions had drawn such a

5    distinction "between areas of public facilities for which a ticket was required, and areas which

6    anyone may enter." (<u>Id.</u>)  Moreover, the court noted that it was uncontroverted that the plaintiff

7    had previously been denied entry to the stadium by the team management, further strengthening

8    the conclusion that the stadium, at least as to the plaintiff, was not open to the public. (<u>Id.</u>)

9    Accordingly, the court in <u>James</u> held that there was no genuine issue of material fact as to

10   whether the officer reasonably believed that the elements of a violation of California Penal Code

11   § 602(n) were satisfied at the time of plaintiff's seizure.  Therefore, the court granted the

12   defendants' motion for summary judgment as to James' Fourth Amendment claim. (<u>Id.</u> at 1086.)

13   The property at issue in this case, however, was not a stadium that required the purchase

14   of a game ticket for entry, but was instead a fast food restaurant, a property which is held open to

15   the general public. <u>See</u> <u>Carolyn v. Orange Park Community Ass'n</u>, 177 Cal. App.4th 1090, 1098

16   (2009) (California law defines restaurants as public accommodations); <u>In re Alcala</u>, 222 Cal.

17   App.3d 345, 365 (1990) ("Businesses open to the public such as inns and restaurants are subject

18   to the mandates of California's Unruh Civil Rights Act prohibiting discrimination."); <u>see</u> <u>also</u>

19   <u>People v. Rosales</u>, 222 Cal. App.4th 1254, 1264 (2014) ("[A]ny member of the public can enter a

20   hotel lobby – not just those who are staying at the hotel.").  Accordingly, Penal Code § 602(n) is

21   inapplicable here.

22   As noted above, defendants counsel contends that defendant McDowell had probable

23   cause to arrest plaintiffs for violating California Penal Codes §§ 148, 602 and/or 602.1.  However,

24   based on the evidence presented at trial the jury reasonably concluded that defendant McDowell

25   did not have probable cause to arrest any plaintiff for a violation of California Penal Code § 602.

26   Under the version of the statute applicable at the time of the events at issue here, of the numerous

27   types of conduct prohibited by § 602, the only one that could possibly relate to this action is the

28   statute's prohibition against entering "any lands . . . with the intention of interfering with . . . any

1   lawful business . . . carried on by the owner . . . ."  CAL. PENAL CODE § 602(k) (2009).  Viewing

2   the evidence presented at the trial in the light most favorable to the plaintiffs and drawing all

3   reasonable inferences in favor of the verdict rendered, the jury clearly could have found that at the

4   time the plaintiffs were arrested in the parking lot they were not interfering with the In-N-Out

5   Burger's business.  Such a finding would compel the conclusion that probable cause did not exist

6   to arrest plaintiffs for a violation of Penal Code § 602.  See In re Wallace, 3 Cal.3d 289, 295

7   (1970) (granting writ of habeas corpus where there was no evidence that petitioner had obstructed

8   a business); cf. In re Ball, 23 Cal. App.3d 380, 386 (1972) ("The testimony that it was necessary

9   to divert offloading of the tram to another area because of petitioner's activities constitutes

10  substantial evidence that he did interfere with Disneyland's lawful business.").

11          For this same reason, in this case the jury clearly could have reasonably concluded that

12  defendant McDowell did not have probable cause to arrest any plaintiff for violating California

13  Penal Code § 602.1.  That provision states that any person "who intentionally interferes with any

14  lawful business . . . by obstructing or intimidating those attempting to carry on business, or their

15  customers, and who refuses to leave the premises" after being asked to leave by the owner

16  or a peace officer is guilty of a misdemeanor.[13]  "Thus, a violation of § 602.1 has two elements:

17  (1) intentional interference, and (2) refusal to leave."  Dubner v. City and County of San

18  Francisco, 266 F.3d 959, 966 (9th Cir. 2001).  As noted above, viewing the evidence in the light

19  most favorable to the plaintiffs the jury here reasonably concluded that at the time plaintiffs were

20  arrested in the parking lot, near the car they had arrived in, they were obviously not intentionally

21  interfering with the restaurant's business.

22          Finally, because the jury reasonably found that defendant McDowell did not have

23  probable cause to arrest plaintiffs for a violation of California Penal Code § 602 or § 602.1, or for

24  any other offense, McDowell did not have probable cause to arrest any plaintiff for a violation of

25  California Penal Code § 148.  At the time of these events California Penal Code § 148 provided

26  that any person who willfully resisted, delayed or obstructed any peace officer "in the discharge

---

[13]  The jury here received specific instructions as to the elements of California Penal Code §
602.1.  (Jury Instructions (Doc. No. 198) at 22-23.)

1  or attempt to discharge any duty of his or her office" was guilty of a fine or imprisonment in

2  county jail not to exceed one year.[14] CAL. PENAL CODE § 148(a)(1) (2009).  However, "[i]n

3  California, the lawfulness of the officer's conduct is an essential element of the offense of [§

4  148]." Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (en banc).  Accordingly, § 148

5  can only be violated where at the time of the offense the officer is engaged in the lawful

6  performance of his duties.  Id.; Beckway v. Deshong, 717 F.Supp.2d 908, 915 (N.D. Cal. 2010);

7  see also Maxwell v. County of San Diego, 697 F.3d 941, 951 (9th Cir. 2012) ("Section 148(a)

8  does not make it a crime, however, to resist unlawful orders."); Robinson v. City of San Diego,

9  954 F. Supp. 2d 1010, 1023 (S.D. Cal. 2013) ("Section 148 has been construed by the courts as

10  applying only to lawful arrests, because "An officer is under no duty to make an unlawful

11  arrest.") (quoting Jackson v. Superior Court, 98 Cal.App.2d 183, 189 (1950)).

12      Here, based upon the evidence introduced at trial, the jury reasonably found that plaintiffs'

13  were arrested without probable cause in violation of their rights under the Fourth Amendment.

14  "'Under California law, an officer is not lawfully performing [his] duties when [he] detains an

15  individual without reasonable suspicion or arrests an individual without probable cause.'" Garcia

16  v. Superior Court, 177 Cal. App.4th 803, 819 (2009) (quoting Nuno v. County of San Bernardino,

17  58 F. Supp.2d 1127, 1134 (C.D. Cal. 1999)).  See also Rodriguez v. City of Modesto, 535 Fed.

18  Appx. 643, 644 (9th Cir. Aug. 2, 2013)[15]; Jackson, 98 Cal.App.2d at 189.

19      Again, viewing the evidence in the light most favorable to the jury's verdict and drawing

20  all reasonable inferences in favor of plaintiffs, the jury could reasonably have determined that

21  defendant McDowell did not have probable cause to arrest plaintiffs for violating California Penal

22  Code § 148.  See Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1178 (9th Cir. 2013);

23  Blankenhorn, 485 F.3d at 472 (recognizing that one cannot be convicted of an offense against an

24  officer engaged in the performance of official duties unless the officer is acting lawfully at the

[14]  The jury here received specific instructions as to the elements of California Penal Code § 148.
(Jury Instructions (Doc. No. 198) at 21.)

[15]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
36-3(b).

1   time, since an officer has no duty to take illegal action and therefore is not engaged in official

2   duties if the officer's conduct is itself unlawful); <u>Arpin v. Santa Clara Valley Transp. Agency</u>,

3   261 F.3d 912, 920 (9th Cir. 2001) ("If the officers could not lawfully arrest Arpin for battery, the

4   officers could also not lawfully arrest Arpin for resisting arrest."); <u>Loharsingh v. City and County</u>

5   <u>of San Francisco</u>, 696 F. Supp.2d 1080, 1100 (N.D. Cal. 2010); <u>Dagdagan v. City of Vallejo</u>, 682

6   F. Supp.2d 1100, 1112 (E.D. Cal. 2010) ("Since Defendants unlawfully entered Plaintiff's

7   apartment, Plaintiff's refusal to answer questions relating to the assault or to cooperate with the

8   police officer's investigation cannot be the basis of a constitutional arrest under Section 148.");

9   <u>Nuno</u>, 58 F. Supp.2d at 1133 ("An officer cannot be engaged in the lawful performance of her

10  duties if she is subjecting an arrestee to excessive force."); <u>In Re Manuel G.</u>, 16 Cal.4th 805, 815

11  (1997) (a defendant cannot be convicted of an offense against a peace officer in the performance

12  of his duties "unless the officer was acting lawfully at the time the offense against the officer was

13  committed"); <u>In re Michael V.</u>, 10 Cal.3d 676, 681 (1974) ("First, it is no crime in this state to

14  nonviolently resist the unlawful action of police officers.").

15      Defense counsel also argues that, even if plaintiffs were arrested without probable cause,

16  defendant McDowell is nonetheless entitled to qualified immunity because "[a]ny reasonable

17  officer" would have believed plaintiffs' arrest was appropriate under the circumstances presented

18  here and because the law as to what constitutes interference with a business was not clearly

19  established at the time of these events.[16]  (Defs.' Ren. Mot. for JMOL (Doc. No. 216) at 15-19.)

20  _____

21  [16]  Defense counsel argues for the first time in his reply brief in support of the renewed motion
    for JMOL that the evidence at trial established that defendant McDowell played no role in

22  plaintiffs' arrests and, therefore, he was not an integral participant in the violation of plaintiffs'
    Fourth Amendment rights.  (Reply (Doc. No. 220) at 3-4.)  Of course, it is improper to raise an

23  argument for the first time in a reply brief.  <u>See</u> <u>Simpson v. Lear Astronics Corp.</u>, 77 F.3d 1170,
    1176 & n.4 (9th Cir. 1995) (issues not raised in opening brief may not properly be raised in

24  reply); <u>Eberle v. City of Anaheim</u>, 901 F.2d 814, 818 (9th Cir. 1990) (as a general rule a party
    may not raise a new issue for the first time in their reply brief).  Moreover, there was sufficient

25  evidence presented at the trial of this case to support the conclusion that defendant McDowell was
    an integral participant in the arrest of each of the plaintiffs.  It was Officer McDowell who first

26  spoke with the manager Young, it was McDowell who first ordered plaintiffs out of the In-N-Out
    Burger, it was McDowell who returned inside the restaurant to discuss a citizen's arrest with

27  Young, it was information provided by McDowell that formed the sole basis for Sgt. Crane's
    arrest order and it was defendant McDowell who personally carried out the arrest of Rachelle

28

1   "Government officials enjoy qualified immunity from civil damages unless their conduct

2   violates 'clearly established statutory or constitutional rights of which a reasonable person would

3   have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v.

4   Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified immunity

5   defense, the central questions are (1) whether the facts alleged, taken in the light most favorable

6   to the plaintiff, demonstrate that the defendants' conduct violated a statutory or constitutional

7   right and (2) whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194,

8   201 (2001).  "[O]fficials can . . . be on notice that their conduct violates established law even in

9   novel factual circumstances."  Hope, 536 U.S. at 741.  "In the context of an unlawful arrest . . .

10  the two prongs of the qualified immunity analysis can be summarized as:  (1) whether there was

11  probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable

12  cause for arrest – that is, whether reasonable officers could disagree as to the legality of the arrest

13  such that the arresting officer is entitled to qualified immunity."  Rosenbaum v. Washoe County,

14  663 F.3d 1071, 1076 (9th Cir. 2011).  See also Johnson, 724 F.3d at 1173.

15         Here, the jury found that plaintiffs were arrested without probable cause in violation of

16  their rights under the Fourth Amendment.  For the reasons discussed above, that verdict is entirely

17  consistent with the evidence presented at trial when viewed in the light most favorable to the

18  plaintiffs, in whose favor the jury returned its verdict on the Fourth Amendment claim.  As the

19  jury determined, probable cause to arrest plaintiffs was lacking.

20         Moreover, as the authorities cited above establish, the state of the law in 2009 was such

21  that defendant Officer McDowell was on notice that arresting an individual for a violation of

22  California Penal Code § 602 or § 602.1 required that the perpetrator be intentionally interfering

23  with a business.  In addition, he was also on notice as to what constituted such an intentional

24  interference with a business.  The authorities cited above likewise establish that defendant

25  Smith, a member of plaintiffs' group.  In short, the evidence at trial established that defendant

26  McDowell was anything but "a mere bystander" and was instead an integral participant in the
    arrests the jury found to be unconstitutional.  See Boyd v. Benton County, 374 F.3d 773, 780 (9th

27  Cir. 2004) (integral participation "does not require that each officer's actions themselves rise to
    the level of a constitutional violation."); see also Blankenhorn, 485 F.3d at 481, n. 12 (an officer

28  who helped in handcuffing the plaintiff identified as an integral participant).

14

1  McDowell was on notice that California Penal Code § 148 could only be violated if, at the time of

2  the offense, the officer was engaged in the lawful performance of his duties.

3      In this regard, Penal Code § 602 and § 602.1 clearly and unambiguously state that

4  intentional interference is a required element of those offenses.  This is not a case where an

5  officer could have reasonably been confused about what was required to constitute a violation of

6  the statute.  See Rosenbaum, 663 F.3d at 1079 ("As our analysis establishes, the statute is

7  unambiguous, and not susceptible to the reading that the county suggests.  Therefore, no

8  reasonable officer could believe that Rosenbaum's conduct violated this statute.")  Prior to the

9  time of these events, courts had acknowledged that intentional interference was a necessary

10 element of the conduct prohibited by those statutes.  See Dubner, 266 F.3d at 966 ("Thus, a

11 violation of § 602.1 has two elements:  (1) intentional interference, and (2) refusal to leave.").

12 Moreover, long before July 4, 2009, courts had provided guidance as to what specific conduct

13 constituted intentional interference in this context.  See Blankenhorn, 485 F.3d at 474

14 ("Reasonable officers could have thought that Blankenhorn, knowing he had been banned a few

15 months earlier, could have intended that his presence would constitute 'injury to property rights'

16 or 'interference' with The Block's business."); In re Wallace, 3 Cal.3d at 295 ("The record is thus

17 devoid of evidence that petitioners 'obstructed' the business of the fair . . . and Pamperin's

18 uncontradicted testimony establishes that petitioners had no intent to do so when they entered the

19 premises.); In re Ball, 23 Cal. App.3d at 386 ("The testimony that it was necessary to divert

20 offloading of the tram to another area because of petitioner's activities constitutes substantial

21 evidence that he did interfere with Disneyland's lawful business.").

22      Similarly, courts had acknowledged well prior to this incident that an officer must first be

23 lawfully performing his or her duties for California Penal Code §  148 to be violated.  See Nuno,

24 58 F. Supp.2d at 1133 ("An officer cannot be engaged in the lawful performance of her duties if

25 she is subjecting an arrestee to excessive force."); Garcia, 177 Cal. App.4th at 819 ("Under

26 California law, an officer is not lawfully performing his duties when he detains an individual

27 without reasonable suspicion or arrests an individual without probable cause.").

28 /////

1       Nonetheless, counsel for defendants asserts that the law pertaining to the disruption of a

2   business under California Penal Code § 602.1 was not clearly established at the time of these

3   events.  (Defs.' Ren. Mot. for JMOL (Doc. No. 216) at 18.)  In support of this assertion defense

4   counsel relies upon the decision in <u>Blankenhorn</u>.  In that case the Ninth Circuit held that "there

5   was no clearly established law" indicating that the plaintiff "could not have been trespassing

6   under the present circumstances" and thus, "even if there were no probable cause," the defendant

7   police officers were entitled to qualified immunity because the "contours" of the plaintiff's Fourth

8   Amendment right to be free from unreasonable seizure was "not clearly established so as to

9   encompass the trespassing charges at issue under *present circumstances*."  <u>Blankenhorn</u>, 485 F.3d

10  at 476 (emphasis added).

11      The circumstances presented to the Ninth Circuit in <u>Blankenhorn</u>, however, stand in stark

12  contrast to the circumstances presented in this case.  The plaintiff in <u>Blankenhorn</u> was "a known

13  member of the 18th Street Gang," who had a prior conviction for robbery and who, most notably,

14  had previously been issued a "Notice Forbidding Trespass" by a security guard at the Block at

15  Orange shopping mall.[17]  <u>Id.</u> at 468.  Thereafter, at about midnight on the night in question,

16  officers stopped the plaintiff upon seeing him in a crowd at the shopping mall.  <u>Id.</u>  Plaintiff was

17  "rude, uncooperative, and verbally abusive during the initial encounter."  <u>Id.</u> at 469.  Reports

18  reflected that the plaintiff "took a fighting stance and clenched his fists."  <u>Id.</u>  Under these

19  circumstances the Ninth Circuit in <u>Blankenhorn</u> found that the police officers had probable cause

20  to arrest the plaintiff for trespassing because "reasonable officers could have concluded" that the

21  plaintiff, "known to be (or have been) a gang member who had previously been banned a few

22  months earlier" returned "for the purpose of injuring any property rights" or "with the intention of

23  /////

24  _____

25  [17]  The Ninth Circuit emphasized the importance of this circumstance to its analysis in
    <u>Blankenhorn</u>.  The court stated that the fact Blankenhorn had been previously issued a formal
26  Notice Forbidding Trespass was what rendered the shopping mall, which would normally be
    considered open to the public, not open to the public on the night in question as to Blankenhorn,
27  thus creating a reasonable belief in the existence of probable cause of a trespass.  485 F.3d at 474.
    (citing <u>Picray v. Sealock</u>, 138 F.3d 767, 772 (9th Cir. 1998)).  Of course, as noted above, no such
28  prior "Notice Forbidding Trespass" had been issued to plaintiffs here.

1    interfering with, obstructing, or injuring any lawful business." Id. at 473.[18]

2        Turning to its analysis of the issue of qualified immunity, the Ninth Circuit in

3    Blankenhorn noted:

> Thus, while it was clearly established long ago that an officer may
> not conduct a warrantless arrest absent probable cause, our analysis
> must be more focused. Applied to the California trespassing
> statutes, as explained earlier, there is no statutory definition of
> "injury to property" or "interference" with a lawful business under
> section 602(j). Nor does California case law make clear that
> returning to property after having been permanently banned cannot
> constitute an "injury" to property or "interference with" (or be a
> "disturbance"), especially where a property owner specifically
> requests police to arrest a person.
>
> Similarly, there is no California case law specifically holding that a
> previous, relatively-recent, banishment from private property
> cannot serve as a requisite "request to leave" under section 602(n).
> What little case law there is interpreting similar issues has emerged
> from First Amendment or union-organizing contexts.

13   (Id. at 476) (alterations and footnotes omitted.)  Accordingly, the Ninth Circuit in Blankenhorn

14   found that, even absent probable cause, the officers were entitled to qualified immunity because

15   "there was no clearly established law" indicating that the plaintiff "could not have been

16   trespassing under the present circumstances."  (Id.)

17        None of the unusual circumstances presented in Blankenhorn, however, were present in

18   this case.  None of the plaintiffs, or their companions, was a known gang member, none was a

19   convicted felon, and none had returned to the Fairfield In-N-Out Burger after having recently

20   been issued a formal Notice Forbidding Trespass.  Instead, the evidence presented at trial

21   established that the plaintiffs were merely young college students, without criminal records, who

22   visited a fast food restaurant and were mistaken, without legitimate reason, as being part of

23   another group of individuals who had apparently caused a minor disturbance at the In-N-Out

24   /////

25   /////

26

27   _____

[18]  Nonetheless, even under those circumstances the Ninth Circuit acknowledged that "an actual
conviction for trespass might have been difficult without additional evidence" of the plaintiff's
28   intention.  Blankenhorn, 485 F.3d at 474.

1   Burger.[19]  The evidence also established that when plaintiffs were told by the In-N-Out manager

2   to place an order or leave and then were immediately thereafter instructed to simply leave the fast

3   food restaurant by police, they promptly complied with that order despite the lack of any basis for

4   it.[20]  Once outside the restaurant, and while waiting at their car for the driver, defendant

5   McDowell told the plaintiffs that they had to leave the In-N-Out property entirely and could not

6   even wait in the parking lot.  Plaintiffs, quite reasonably, attempted to explain to the police

7   officers that they could not leave because the driver of their vehicle was still inside waiting for

8   her food order.  When plaintiffs did not leave the parking lot where their car was parked, they

9   were arrested without probable cause.  These circumstances are far, far different than those

10  presented in Blankenhorn.  See Wall v. County of Orange, 364 F.3d 1107, 1111 (9th Cir. 2004)

11  (The "clearly established" requirement "does not mean that the very action at issue must have

12  been held unlawful before qualified immunity is shed.") (citing Hope v. Pelzer, 536 U.S. 730, 739

13  (2002)); see also Torres v. City of Madera,  648 F3d  1119, 1128-29 (9th Cir. 2011) ("[W]e have

14  never required a prior case 'on all fours prohibiting that particular manifestation of

15  unconstitutional conduct' to find a right 'clearly established.'")

16          Moreover, although the court in Blankenhorn acknowledged that there are some

17  circumstances in which the contours of California's trespassing laws may not be clearly

18  established, it was certainly clearly established at the time of plaintiffs' arrests that a violation of

19  the trespassing statutes required both an intentional interference with the operation of a business

20  and a refusal to leave.  Here, unlike the situation presented in Blankenhorn, there was absolutely

21  no evidence that would have allowed a reasonable officer to conclude that the plaintiffs were

22

23  [19]  Indeed, at trial no evidence was presented establishing that anything fairly characterized as "a
    disturbance" had actually taken place at all.  The videotape that was introduced into evidence and
24  repeatedly played before the jury depicted a busy dining room with many young people present,
    but did not evidence any disturbance.  It also did not depict any throwing of food or of those
25  inside refusing to leave the dining area.

26  [20]  In fact, the directive issued by the In-N-Out manager Young was to "order or leave."  When
27  plaintiffs' companion Rachelle Smith attempted to comply with that directive by heading to the
    front counter to place an order she was physically prevented from doing so by one of the officers
28  and guided to the exit.

1    intentionally interfering with the In-N-Out Burger's business operation, especially once plaintiffs

2    were outside the restaurant and merely waiting in the parking lot for the driver of the car in which

3    they had just arrived.  See Dubner, 266 F.3d at 966 ("Thus, a violation of § 602.1 has two

4    elements: (1) intentional interference, and (2) refusal to leave."); Shin v. City of Union City, No.

5    C 02-2648 CRB, 2004 WL 2091992, at *3 (N.D. Cal. Sept. 17, 2004) (denying qualified

6    immunity where plaintiff was unlawfully arrested for violating Penal Code §602.1 because "[i]t is

7    abundantly clear from the face of the statute that it requires both (1) an intentional interference

8    and (2) a refusal to leave.")[21]; Howard v. County of San Diego, Nos. 09-cv-2416-IEG (WVG),

9    10-cv-2290-IEG (WVG), 2011 WL 4023605, at *6-7 (S.D. Cal. Sept. 9, 2011); see also Rodis v.

10   City, County of San Francisco, 558 F.3d 964, 969 (9th Cir. 2009) ("[W]hen specific intent is a

11   required element of the offense, the arresting officer must have probable cause for that element in

12   order to reasonably believe that a crime has occurred.") (quoting Gasho v. United States, 39 F.3d

13   1420, 1428 (9th Cir. 1994)).

14          For the reasons set forth above, defendants' renewed JMOL motion on qualified immunity

15   grounds must be denied.  See Rosenbaum, 663 F.3d at 1078 ("The law acknowledges that an

16   otherwise competent officer will sometimes make an unreasonable decision or make an

17   unreasonable mistake as to law or fact.  In those instances, the officer will appropriately be liable

18   under § 1983."); Liberal v. Estrada, 632 F.3d 1064, 1078 (9th Cir. 2011) (denying qualified

19   immunity because the officer's mistake of fact was unreasonable); see also Jenkins v. City of

20

---

21   [21]   Instructive in this regard is the order in Shin finding no basis to grant the defendant officer
     qualified immunity and denying the defendant's motion for judgment notwithstanding the verdict
22   under circumstances similar to those presented in this case.  There, the court stated:

23                 Officer Vance advances two theories justifying the reasonableness
                   of his arrest of plaintiff. First, he asserts that it was reasonable for
24                 him to believe that he could arrest plaintiff after plaintiff defied his
                   order to leave the store. However, because the jury found that
25                 plaintiff had not interfered with Kinko's business, and thus had not
                   violated section 602.1, Officer Vance had no authority to ask him to
26                 leave. It was therefore unreasonable for Officer Vance to have
                   thought that he could arrest plaintiff for defying his order to leave
27                 when he had no authority to make such an order.

28   2004 WL 2091992, at *3.

19

1  New York, 478 F.3d 76, 87 (2d Cir. 2007) (noting that a police officer is not entitled to qualified

2  immunity "if officers of reasonable competence would have to agree that the information

3  possessed by the officer at the time of arrest did not add up to probable cause").

4      Finally, defense counsel argues that a new trial must be granted because the jury's verdict

5  with respect to plaintiffs' Fourth Amendment claim and Bane Act (California Civil Code § 52.1)

6  claim is inconsistent.  (Defs.' Ren. Mot. for JMOL (Doc. No. 216) at 19-20.)

7      The District Court has the discretion to grant a new trial "for any reason for which a new

8  trial has heretofore been granted in an action at law in federal court."  FED. R. CIV. P. 59(a)(1)(A).

9  Because "Rule 59 does not specify the grounds on which a motion for a new trial may be

10  granted," courts are "bound by those grounds that have been historically recognized."  Zhang v.

11  Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003).  Cognizable grounds for a new

12  trial include:  (1) a verdict that is contrary to the weight of the evidence; (2) a verdict that is based

13  on false or perjurious evidence; or (3) to prevent a miscarriage of justice.  Molski v. M.J. Cable,

14  Inc., 481 F.3d 724, 729 (9th Cir. 2007).[22]

15      Historically, courts have been reluctant to base the granting of a new trial upon alleged

16  inconsistencies in a jury's verdicts.  Zhang, 339 F.3d at 1034 (We have found no Supreme Court

17  or Ninth Circuit cases in which an appellate court has directed the trial court to grant a new trial

18  due to inconsistencies between general verdicts, and Ninth Circuit precedent dictates that we

19  cannot do so.")  As one District Court has recently observed:

20          Courts are not obligated to set aside a verdict wherever there is any
        sort of inconsistency.  Indeed, the Ninth Circuit allows courts to set
21      aside verdicts on grounds of inconsistency only when absolutely
        necessary.  "The question is whether the verdict can be reconciled
22      on any reasonable theory consistent with the evidence."  Ward v.
        City of San Jose, 967 F.2d 280, 286 (9th Cir.1991).  Thus, "[w]hen
23      faced with a claim that verdicts are inconsistent, the court must
        search for a reasonable way to read the verdicts as expressing a
24      coherent view of the case, and must exhaust this effort before it is
        free to disregard the jury's verdict and remand the case for a new
25      trial."  Toner for Toner v. Lederle Laboratories, a Div. of American
        Cyanamid Co., 828 F.2d 510, 512 (9th Cir. 1987).

26

27  _____

28  [22]  There has been no showing that the jury's verdict in this case was contrary to the weight of the
    evidence, based on false or perjurious evidence or representative of a miscarriage of justice.

Apple, Inc. v. Samsung Electronics Co., Ltd., 920 F. Supp2d 1079, 1101 (N.D. Cal. 2013).

Here, with respect to plaintiffs' Fourth Amendment unlawful arrest claim, the jury was instructed that the plaintiffs were required to prove that the defendants violated plaintiffs' rights under the United States Constitution by falsely arresting them without probable cause. (Jury Instructions (Doc. No. 198) at 19.) With respect to plaintiffs' Bane Act claim, the jury was instructed that the plaintiffs were required to prove that the defendants interfered with plaintiffs' right to be free from false arrest without probable cause in seeking to use a public facility and that the plaintiffs reasonably believed that if they exercised their rights, the defendants would arrest them. (Id. at 28.) The two liability determinations, while depending on the same facts, were legally independent of one another and therefore the verdicts must stand. See Apple, Inc., 920 F. Supp2d at 1101.[23]

For all of the reasons set forth above, defendants' motion for a new trial will be denied.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' May 31, 2013 motion to amend the judgment (Doc. No. 216) is granted;

2. The judgment is amended to reflect that as to plaintiffs' claim that they were arrested without probable cause in violation of their rights under the Fourth Amendment, the judgment is entered in their favor only as to defendant McDowell; and

3. Defendants' May 31, 2013 renewed motion for judgment as a matter of law, or in the alternative motion for a new trial, (Doc. No. 216) is denied.

Dated: March 31, 2014

DAD:6
Ddad1/orders.consent/hall0508.jmol.docx

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

---

[23]  Although the verdicts were not legally inconsistent, it is possible that the jury did not fully understand the elements of plaintiffs' Bane Act claim and that, if they had, based on the evidence presented at the trial they would have found in favor of plaintiffs as to that cause of action as well. In this regard, instead of being prejudiced, the defendants may well have benefited from any confusion that was created by the manner in which the case was presented to the jury.