1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARKUS M. HALL, MONIQUE G.              No.  2:10-cv-0508 DAD
     RANKIN, LINDSEY K. SANDERS,
12

13                  Plaintiffs,              ORDER

14         v.

15   CITY OF FAIRFIELD, OFFICER NICK
     McDOWELL, OFFICER CHRIS GRIMM,
16   OFFICERS TOM SHACKFORD,
     OFFICER ZACK SANDOVAL, AND
17   SERGEANT STEVE CRANE,

18                  Defendants.

19

20         This matter came before the court on July 12, 2013, for hearing of plaintiffs' motion for

21   attorneys' fees pursuant to 42 U .S.C. § 1988(b) and Local Rule 293.  (Doc. No. 211.)[1]  Attorney

22   Garret Murai appeared on behalf of the plaintiffs and attorney Kevin Gilbert appeared on behalf

23   of the defendants.  Oral argument was heard and plaintiffs' motion was taken under submission.

24   For the reasons set forth below, plaintiffs' motion for attorneys' fees will be granted in part.

25   /////

26   _____
     [1]  U.S. Senior District Judge Garland E. Burrell, Jr., presided over this action through the issuance
27   of the Final Pretrial Order.  On January 14, 2013, following the parties' consenting to Magistrate
     Judge jurisdiction pursuant to 28 U.S.C. § 636(c), the matter was reassigned to the undersigned
28   for all purposes.  (Doc. Nos. 175 & 176.)

BACKGROUND

Plaintiffs commenced this civil rights action over four years ago by filing a complaint and paying the required filing fee on March 2, 2010.  (Doc. No. 1.)  Plaintiffs' complaint alleged causes of action against the City of Fairfield and Fairfield Police officers Nick McDowell, Chris Grimm, Tom Shackford, Zack Sandoval and Sergeant Steve Crane, stemming from plaintiffs' arrest.[2]

Through various pre-trial motions and rulings the action was eventually narrowed so that the case proceeded to trial on April 29, 2013 with respect to the following claims:  false arrest without probable cause in violation of the Fourth Amendment against defendant McDowell; excessive use of force in violation of the Fourth Amendment against defendant Crane; and interference with plaintiffs' Constitutional or statutory rights in violation of California Civil Code § 52.1 against all defendants.

Following the receipt of all evidence, the jury was instructed and began its deliberations on May 7, 2013.  (Doc. No. 195.)  On May 9, 2013, the jury returned its verdict.  (Doc. No. 207.)  The jury found that defendants violated plaintiffs' rights under the Fourth Amendment by falsely arresting them without probable cause.  (Id. at 2.)  However, the jury did not find by a preponderance of the evidence that defendant Crane used excessive force in arresting plaintiff Sanders and did not find by a preponderance of the evidence that the defendants violated California Civil Code § 52.1.  (Id.)  The jury awarded plaintiff Hall $2,650, plaintiff Sanders $3,850 and plaintiff Rankin $5,650 for a total damages award of $12,150 and judgment was entered on May 13, 2013.  (Doc. No. 209.)

On May 31, 2013, plaintiffs' counsel filed the motion for attorneys' fees now pending before the court.[3]  (Pls.' Mot. (Doc. No. 211)).  Defendants filed an opposition on June 28, 2013, (Defs.' Opp.'n. (Doc. No. 218)), and plaintiffs filed a reply on July 3, 2013. (Pls.' Reply (Doc.

---

[2]  Plaintiffs also named as defendants in this action In-N-Out Burger and one of its employees, Marc Young who was the manager on duty at the Fairfield In-N-Out Burger on the night in question.  Plaintiffs, however, reached a settlement with these defendants prior to trial.

[3]  On June 10, 2013, defendants filed a renewed motion for judgment as a matter of law.  (Doc. No. 216.)  That motion was denied in a separate order filed contemporaneously with this order.

No. 219)).  As updated by plaintiffs' reply, plaintiffs seek an attorneys' fee award in the amount

of $692,870.[4]  (Pls.' Reply (Doc. No. 219) at 10-11.[5])

### STANDARD GOVERNING THE AWARD OF ATTORNEYS' FEES

In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow

the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs

. . . ."  42 U.S.C. § 1988(b).  The Supreme Court has explained the historical underpinnings and

purpose of § 1988(b) as follows:

> In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S.
> 240 (1975), this Court reaffirmed the "American Rule" that each
> party in a lawsuit ordinarily shall bear its own attorney's fees unless
> there is express statutory authorization to the contrary.  In response
> Congress enacted the Civil Rights Attorney's Fees Awards Act of
> 1976, 42 U.S.C. § 1988, authorizing the district courts to award a
> reasonable attorney's fee to prevailing parties in civil rights
> litigation.  The purpose of § 1988 is to ensure "effective access to
> the judicial process" for persons with civil rights grievances.  H.R.
> Rep. No. 94-1558, p. 1 (1976).  Accordingly, a prevailing plaintiff
> "'should ordinarily recover an attorney's fee unless special
> circumstances would render such an award unjust.'"  S. Rep. No.
> 94-1011, p. 4 (1976), U.S. Code Cong. & Admin. News 1976, p.
> 5912 (quoting Newman v. Piggie Park Enterprises, 390 U.S. 400,
> 402 (1968)).

Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (parallel citations omitted).  See also Barnard v.

Theobald, 721 F.3d 1069, 1077 (9th Cir. 2013) ("'[A] court's discretion to deny fees under §

1988 is very narrow and . . . fee awards should be the rule rather than the exception.'"); Mendez

v. County of San Bernardino, 540 F.3d 1109, 1124 (9th Cir. 2008); Sable Commc'ns v. Pac. Tel.

& Tel., 890 F.2d 184, 193 (9th Cir. 1989) ("Plaintiffs prevailing in a civil rights action should

ordinarily receive attorney's fees unless special circumstances would render such an award

unjust.").

A prevailing party is one who succeeds on any significant issue in the litigation, resulting

in a "material alteration of the legal relationship of the parties."  Texas State Teacher's Ass'n v.

---

[4]  Plaintiffs' also seek $12,994.51 in costs.  (Pls.' Mot. (Doc. No. 211) at 7; Pls.' Bill of Costs
(Doc. No. 210) at 4.)  Plaintiffs' request for costs will be addressed by way of a separate order.

[5]  Page number citations such as this one are to the page number reflected on the court's CM/ECF
system and not to page numbers assigned by the parties.

1    Garland Indep. School Dist., 489 U.S. 782, 792-93 (1989).  Given the jury's verdict in plaintiffs

2    favor on their claim that their rights under the Fourth Amendment were violated by their arrest

3    without probable cause, the plaintiffs are clearly a prevailing party.  It is the size of the fee award

4    to which plaintiffs' counsel are entitled that is disputed by defendants here.

5          "[T]he fee applicant bears the burden of establishing entitlement to an award and

6    documenting the appropriate hours expended and hourly rates."  Hensley, 461 U.S. at 437.  See

7    also Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013) ("The prevailing party

8    has the burden of submitting billing records to establish that the number of hours it has requested

9    are reasonable."); Carson v. Billings Police Dept., 470 F.3d 889, 891 (9th Cir. 2006).[6]

10         "The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting

11   jurisprudence, a standard that is the fundamental starting point in determining a reasonable

12   attorney's fee."  Van Skike v. Director, Office of Workers' Compensation Programs, 557 F.3d

13   1041, 1048 (9th Cir. 2009) (quoting City of Burlington v. Dague, 505 U.S. 557, 562 (1992)).

14   See also Hensley, 461 U.S. at 433.  Accordingly, a district court is required "to calculate an award

15   of attorneys' fees by first calculating the 'lodestar' before departing from it."  Camacho v.

16   Bridgeport Financial, Inc., 523 F.3d 973, 982 (9th Cir. 2008) (quoting Caudle v. Bristow Optical

17   Co. Inc., 224 F.3d 1014, 1028 (9th Cir. 2000)).  "The 'lodestar' is calculated by multiplying the

18   number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly

19   rate."  Camacho, 523 F.3d at 978 (quoting Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149

20   n. 4 (9th Cir. 2001)).  See also Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir.

21   2008) ("The number of hours to be compensated is calculated by considering whether, in light of

22   the circumstances, the time could reasonably have been billed to a private client."); Caudle, 224

23   F.3d at 1028; Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).  Applying these

24   standards, "a district court should exclude from the lodestar amount hours that are not reasonably

25   _____

26   [6]  "The party opposing the fee application has a burden of rebuttal that requires submission of
     evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted
27   by the prevailing party in its submitted affidavits."  Camacho v. Bridgeport Financial, Inc., 523
     F.3d 973, 980 (9th Cir. 2008) (quoting Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir.
28   1992)).  See also Ruff v. County of Kings, 700 F. Supp.2d 1225, 1228 (E.D. Cal. 2010).

1  expended because they are 'excessive, redundant, or otherwise unnecessary.'"  <u>Van Gerwen v.</u>

2  <u>Guarantee Mutual Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting <u>Hensley</u>, 461 U.S. at

3  434).  <u>See also</u> <u>McCown v. City of Fontana</u>, 565 F.3d 1097, 1102 (9th Cir. 2009); <u>Tahara v.</u>

4  <u>Matson Terminals, Inc.</u>, 511 F.3d 950, 955 (9th Cir. 2007).

5         As noted, the lodestar figure is presumptively reasonable.  <u>See</u> <u>Dague</u>, 505 U.S. at 562

6  ("We have established a 'strong presumption' that the lodestar represents the 'reasonable'

7  fee[.]"); <u>Gonzalez</u>, 729 F.3d at 1202 ("The product of this computation – the "lodestar figure" – is

8  a "presumptively reasonable" fee under 42 U.S.C. § 1988."); <u>see also</u> <u>Mendez</u>, 540 F.3d at 1129;

9  <u>Ballen v. City of Redmond</u>, 466 F.3d 736, 746 (9th Cir. 2006) ("In the Ninth Circuit, the

10  customary method of determining the permissible amount of attorneys' fees under § 1988 is the

11  'lodestar' method.").  However, "in rare cases, a district court may make upward or downward

12  adjustments to the presumptively reasonable lodestar on the basis of those factors set out in <u>Kerr</u>

13  <u>v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in

14  the lodestar calculation."  <u>Camacho</u>, 523 F.3d at 982.  Those factors to be considered in making

15  any adjustment to the presumptively reasonable lodestar include:

16             (1) the time and labor required, (2) the novelty and difficulty of the
               questions involved, (3) the skill requisite to perform the legal
17             service properly, (4) the preclusion of other employment by the
               attorney due to acceptance of the case, (5) the customary fee, (6)
18             whether the fee is fixed or contingent, (7) time limitations imposed
               by the client or the circumstances, (8) the amount involved and the
19             results obtained, (9) the experience, reputation, and ability of the
               attorneys, (10) the 'undesirability' of the case, (11) the nature and
20             length of the professional relationship with the client, and (12)
               awards in similar cases.
21

22  <u>Kerr</u>, 526 F.2d at 70.  <u>See also</u> <u>Mendez</u>, 540 F.3d at 1129; <u>Ballen</u>, 466 F.3d at 746 ("After making

23  that computation, courts then assess whether it is necessary to adjust the presumptively

24  reasonable lodestar figure on the basis of twelve factors.").

25         Finally, in applying these legal standards the court is cognizant of the following

26  overarching guidance provided by the Ninth Circuit:

27             Lawyers must eat, so they generally won't take cases without a
               reasonable prospect of getting paid.  Congress thus recognized that
28             private  enforcement  of  civil  rights  legislation  relies  on  the

availability of fee awards:  "If private citizens are to be able to assert their civil rights, and if those who violate the Nation['s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."  S. Rep. No. 94-1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910. [fn. omitted]  At the same time, fee awards are not negotiated at arm's length, so there is a risk of overcompensation.  A district court thus awards only the fee that it deems reasonable.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The client is free to make up any difference, but few do.  As a practical matter, what the district court awards is what the lawyer gets.

In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, City of Riverside v. Rivera, 477 U.S. 561, 579-80 (1986), and avoiding a windfall to counsel, see Blum v. Stenson, 465 U.S. 886, 897 (1984) (quoting S. Rep. No. 94-1011, at 6 (1976)).  The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.

Moreno, 534 F.3d at 1111.  With this guidance firmly in mind, the court will turn to the fee application in this civil rights action.

## ANALYSIS

### I.     Rule 68 Offer

On June 13, 2011, defendants served plaintiffs with a formal "Rule 68 Offer of Judgment" in the amount of $15,000.  (Defs.' Opp.'n (Doc. No. 218) at 9.)  Rule 68 of the Federal Rules of Civil Procedure provides that "a party defending a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued."  If the offeree rejects the offer, and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after making the offer."  FED. R. CIV. PRO. 68.  Defendants now argue that because the judgment obtained by plaintiffs totaled $12,150 - less than the defendants' Rule 68 offer of $15,000 - plaintiffs are responsible for all costs, including attorney fees, incurred after June 13, 2011.  Applying this contorted logic, defendants argue that "[p]laintiffs' potentially recoverable fees are reduced to zero."  (Defs.' Opp.'n (Doc. No. 218) at 10.)

Defendants' Rule 68 offer of $5,000 to each plaintiff, however, by its very terms included "any liability for all costs of suit and all attorneys' fees otherwise recoverable in this action."

1   (Pls.' Reply, Ex. C (Doc. No. 212-1) at 72-80.)  In fact defendants' Rule 68 offer to each plaintiff

2   emphasized that "[i]f plaintiff accepts this offer of compromise, she [he] acknowledges that she

3   [he] has no entitlement to recover any amount in excess of $5,000, and shall have no claim for

4   additional costs, attorneys' fees or any other amount against Defendants pursuant to this offer."

5   (Id.) (emphasis added).[7]

6          As the Ninth Circuit has recognized:

7              Because successful plaintiffs are entitled to attorney's fees under
               section 1988, we must consider the amount of attorney's fees
8              accrued at the time of the offer when deciding whether the plaintiffs
               improved their positions by going to trial.
9

10  Corder v. Gates,  947 F.2d 374, 380 n.9 (9th Cir. 1991).  See also Marek v. Chesny, 473 U.S. 1,

11  6-7 (1985) (Rule 68 to be interpreted to provide for a lump sum offer that would, if accepted

12  represent the defendant's total liability including costs and where appropriate attorney's fees);

13  Barrios v. Diamond Contract Services, Inc., 461 Fed. Appx. 571, 573 (9th Cir. 2011)[8] ("The

14  district court should have compared the offer of judgment to the jury verdict plus Barrios's

15  reasonable attorney's fees and costs incurred at the time the Rule 68 offer was made."); Sanders

16  v. Roe, No. CV 01-10509 CJC (MLGx), 2007 WL 2258287, at *1 (C.D. Cal. Apr. 1, 2007)

17  ("However, in order to compare the amount of recovery to the amount of any offer, the Court

18  must also consider the pre-offer costs accrued by the plaintiff.").

19         For example, the Ninth Circuit in Corder explained:

20             The plaintiffs' attorneys had accrued $39,000 in fees at the time of
               the $45,000 Rule 68 offer.  Because successful plaintiffs are
21             entitled to attorney's fees under section 1988, we must consider the
               amount of attorney's fees accrued at the time of the offer when
22             deciding whether the plaintiffs improved their positions by going to
               trial.  The jury verdict of $24,000 plus the pre-offer accrued fees of
23             $39,000 exceeded the $45,000 Rule 68 offer.  Thus, because the

24  _____

25  [7]  Given this clear language of their Rule 68 offer, the court has doubts as to whether defendants'
     argument on this point has been advanced in good faith.  In any event, by resisting reasonable
26  concessions and in making such unsupported arguments, defendants have succeeded in requiring
     plaintiffs' counsel to spend additional time for which they must now be compensated.

27
     [8]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
28  36-3(b).

                                                    7

1   plaintiffs improved their position by rejecting defendants' offer and
    going to trial, Rule 68 did not control.
2

3   947 F.2d at 318.

4       Similarly, the Eighth Circuit has illustrated the proper application of Rule 68 in this

5   context, explaining:

6           On the date of the offer, the plaintiff had already incurred
            reasonable attorney fees in the sum of $3,500.00.  Consequently,
7           the offer of $15,000.00 did not exceed the total recovery.  Plaintiff
            was entitled to recover $12,500.00 in damages plus $3,500.00
8           attorney fees.  If the plaintiff had accepted the Rule 68 offer of
            judgment in February, 1991, she would have received $15,000.00.
9           Out of this $15,000.00 she would have had to pay attorney fees and
            all other costs of this action.  Clearly, the judgment finally obtained
10          after trial was more favorable than the offer proposed by the
            appellants in February, 1991.  If the plaintiff's payment of her own
11          attorney fees was part of the Rule 68 offer, it is surely equitable that
            attorney fees be included as part of the recovery.  This is the only
12          way in which the offer can be fairly matched against the recovery.

13  Scheeler v. Crane Co. 21 F.3d 791, 792-93 (8th Cir. 1994).

14      Here, plaintiffs' assert that they had accrued $183,899.06 in attorneys' fees prior to

15  receiving defendants' Rule 68 offer.  (Pls.' Reply (Doc. No. 219) at 6.)  The jury verdict of a total

16  award of $12,150 in damages plus the pre-offer accrued fees of $183,899.06 far exceeds

17  defendants' all-inclusive $15,000 Rule 68 offer to the three plaintiffs.[9]  Thus, by refusing

18  defendants' offer and going to trial plaintiffs clearly improved their position.

19      Defendants next argue, however, that the court must also consider the amount plaintiffs'

20  received from former defendants, In-N-Out Burger and Marc Young, who reached a settlement

21  with plaintiffs prior to defendants making of their Rule 68 offer.  (Defs.' Opp.'n (Doc. No. 218)

22  at 9-10.)  In this regard, defendants argue that the plaintiffs' claims against them were identical to

23  those asserted against In-N-Out Burger and Marc Young and thus plaintiffs' "damages are joint

24  [9]  It would have been unavailing for defendants to have argued that plaintiffs claimed attorney's
    fees of $183,899.06 was unreasonable in the context of this argument.  In light of the significant
25  disparity between defendants' Rule 68 offer and plaintiffs' accrued attorney's fees, even if the
    court were to substantially reduce the applicable hourly rates, number of hours expended and
26  conducted a line by line review of the billing statements eliminating any entry that was arguably
    not compensable, it would still be impossible for defendants' Rule 68 offer of $15,000 to have
27  exceeded plaintiffs' total recovery of $12,150 in total damages plus an amount for reasonable
    attorneys' fees incurred by plaintiffs as of June 13, 2011.
28

1  and severable and defendants are entitled to credits for the amounts paid" pursuant to plaintiffs'

2  settlement agreement with In-N-Out Burger and Marc Young.  (Id. at 10.)

3    The only authority cited by defendants in support of this bald assertion is their passing

4  citation to the decision in Federal Sav. & Loan Ins. Corp. v. Butler, 904 F.2d 505 (9th Cir. 1990).

5  Butler, however, did not involve the application of Rule 68 but instead of California Code of

6  Civil Procedure § 877 pursuant to the terms of a settlement agreement that expressly stated that

7  California law would govern in that matter.[10]  904 F.2d at 508.  Defendants' reliance on the

8  decision in Butler is therefore misplaced.  Since defendants argument on this point is otherwise

9  completely unsupported, the court finds it to be wholly unpersuasive.[11]

10    Accordingly, for the reasons stated above, the court concludes that Rule 68 does not apply

11  here and has no impact on the pending application for the award of attorneys' fees.

12  **II.**   **Attorneys' Fees**

13    A. REASONABLE HOURLY RATES

14    The court "must determine a reasonable hourly rate to use for attorneys and paralegals in

15  computing the lodestar amount."  Gonzalez, 729 F.3d at 1205 (citation omitted).  In assessing

16  applications for attorney's fees the reasonable hourly rates are to be calculated according to the

17  prevailing market rates in the relevant legal community.[12]  Blum, 465 U.S. at 895; Ingram v.

18  ─────────────────

19  [10]  California Code of Civil Procedure § 877 addresses the impact of a good faith settlement on

20  settling and nonsettling tortfeasors by providing that a good faith settlement and release of one joint tortfeasor "merely reduces, by the settlement amount, the damages that the plaintiff may

21  recover from the nonsettling joint tortfeasors[.]"  Aidan Ming Ho Leung v. Verdugo Hills Hosp., 55 Cal 4th 291, 301 (2012).  That state law provision does not address attorney's fees awards.

22  [11]  The logic underlying defendants' argument is puzzling and, if adopted, would result in non-

23  settling defendants being unjustly rewarded.  In short, defendants here are seeking considerable

24  benefit from a settlement agreement in which they played no part and in which they invested nothing.

25  [12]  In doing so, the court has paid particular attention to those cases, decided within two years of

26  the time that plaintiffs' counsel began their work in this case, in which judges of the Eastern District of California have been called upon to determine the prevailing market rate for civil

27  rights attorneys in Sacramento.  See Bell v. Clackamas County, 341 F.3d 858, 869 (9th Cir. 2003)

28  ("We hold, however, that it was an abuse of discretion in this case to apply market rates in effect more than two years *before* the work was performed.") (emphasis in original).

1  Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable

2  hourly rate, the district court should be guided by the rate prevailing in the community for similar

3  work performed by attorneys of comparable skill, experience, and reputation.'") (quoting

4  Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986)); Van Skike, 557 F.3d

5  at 1046; Carson, 470 F.3d at 891.  It is also the general rule that the "relevant legal community" is

6  the forum district and that the local hourly rates for similar work should normally be employed.

7  Gonzalez, 729 F.3d at 1205; Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir.

8  2010); Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d

9  1392, 1405 (9th Cir.1992).[13]  The initial burden is on the applicant to produce satisfactory

10  evidence that the requested rate is "in line with those prevailing in the community for similar

11  services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S.

12  at 895 n. 11.  See also Gonzalez, 729 F.3d at 1206 ("[T]he fee applicant has the burden of

13  producing 'satisfactory evidence' that the rates he requests meet these standards."); Nadarajah v.

14  Holder, 569 F.3d 906, 916 (9th Cir. 2009); Camacho, 523 F.3d at 978; L.H., 645 F. Supp.2d at

15  893 ("Finally, a reasonable rate should reflect not only the market rates, but the skill and

16  experience of the prevailing party's counsel.")

17       Here, plaintiffs seek hourly rates of $425 to $435 per hour for the services rendered by

18  attorney Edwin J. Wilson, Jr. and $295 to $390 per hour for the services of attorney Garret D.

19  Murai.  (Pl.'s Mot. for Fees (Doc. No. 211) at 16.)  Defendants counter that the reasonable rate

20  for attorney Wilson should not exceed $380 per hour and that the reasonable rate for attorney

21  Murai should not exceed $275 per hour.  (Defs.' Opp.'n. (Doc. No. 218) at 11.)

22  /////

23

24  [13]  "Typically, the relevant legal community is that in which the forum district is located
    [but][t]he prevailing party may be awarded the reasonable rates of another legal community when

25  it has tendered evidence that attorneys adequate to conduct the litigation at issue were unavailable
    in the forum market."  L.H. v. Schwarzenegger, 645 F. Supp.2d 888, 893 (E.D. Cal. 2009).  No

26  such evidence has been tendered here.  Indeed, judges in this district have consistently applied the
    prevailing market rate for civil rights attorneys practicing in the Sacramento area in §1983 cases

27  comparable to this one.  See Deocampo v. Potts, Civ. No. 2:06-1283 WBS CMK, 2014 WL
    788429, at *8 (E.D. Cal. Feb. 25, 2014) (and cases cited therein).

28

1    Attorney Wilson and attorney Murai have each submitted declarations establishing that

2    both are experienced attorneys.  Attorney Murai's declaration establishes that he has been a

3    practicing attorney since 2001 (approximately twelve years at the time of this trial) and has

4    previously litigated "numerous § 1983 claims on behalf of the City of Oakland's City Attorney's

5    Office."  (Murai Decl. (Doc. No. 212) at 2.)  He has also been a partner in his law firm since

6    2010.  (Id., Ex. C.)  Nonetheless, attorney Murai concedes that he specializes in construction law,

7    not civil rights litigation, and his resume reflects that his other primary areas of practice relate to

8    real estate and business matters.  (Id. & Ex. C.)  Attorney Wilson's declaration reflects that he has

9    been a practicing attorney since 1971, that he has tried more than forty jury trials, and has

10   "handled numerous plaintiff 1983 cases," including the well-known case of Joe Morgan v.

11   Woessner, 997 F.2d 1244 (9th Cir. 1993).  (Wilson Decl. (Doc. No. 213) at 2-3.)[14]

12   Plaintiffs have also submitted in support of their motion an affidavit from attorney Stewart

13   Katz.[15]  Mr. Katz has been a practicing attorney since 1987 and has tried over 160 cases to verdict

14   in federal and state court, has litigated over one hundred civil rights actions in federal and state

15   courts, has argued cases before the Ninth Circuit Court of Appeals and the California Supreme

16   Court, has given MCLE presentations on issues related to § 1983 litigation, has lectured at law

17   schools on the topic of civil rights litigation and recently testified as an expert witness regarding

18   the practice of civil rights law.  (Katz Decl. (Doc. No. 214) at 1-2.)

19   The court acknowledges that attorney Katz has extensive experience litigating civil rights

20   action in the Eastern District of California and that he is an attorney of considerable reputation

21   and skill in the practice of civil rights litigation in this market.  In light of Mr. Katz' considerable

22   skill, experience and reputation, this court has previously found that a rate of $350 per hour was

23   a reasonable hourly rate in Sacramento for his services rendered on behalf of a plaintiff in a

24

25   [14]  As noted, the parties consented to Magistrate Judge jurisdiction in January of  2013.  (Doc. No.
     175.)  Thereafter, the only appearance attorney Wilson made in this action was at the January 25,
26   2013 telephonic status conference.  (Doc. No. 178.)

27   [15]  "[A]ffidavits of . . . other attorneys regarding prevailing fees in the community . . . are
     satisfactory evidence of the prevailing market rate" but "do not conclusively establish the
28   prevailing market rate."  Camacho, 523 F.3d at 980 (internal citations and quotations omitted).

§1983 action.  See Jones v. County of Sacramento, No. CIV S-09-1025 DAD, 2011 WL 3584332, at *9 (E.D. Cal. Aug. 12, 2011).[16]

The court finds that despite their credentials and considerable experience, attorneys Wilson and Murai are not lawyers of greater skill, experience and reputation in the field of civil rights litigation than Mr. Katz.  In this regard, the court cannot find that either attorney Wilson or attorney Murai are entitled to a higher hourly rate than Mr. Katz.  Accordingly, the court finds that the hourly rates sought by plaintiffs' attorneys in this case ($425 to $435 per hour and $295 to $390 per hour) exceed the market rate in the Sacramento area for even experienced and successful civil rights attorneys.  See Deocampo v. Potts, Civ. No. 2:06-1283 WBS CMK, 2014 WL 788429, at *9 (E.D. Cal. Feb. 25, 2014) (finding $400 to be the appropriate hourly rate for an attorney with nearly thirty-five years of legal experience and "a record of high-profile representations in civil rights matters"); Lehr v. City of Sacramento, No. 2:07-cv-1565 MCE GGH, 2013 WL 1326546, at *7 (E.D. Cal. Apr. 2, 2013) (finding $400 to be a reasonably hourly rate for "one of the most experienced and successful civil rights attorneys in the Sacramento area").

The court does, however, find that attorney Wilson is a lawyer of reasonably comparable skill, experience and reputation as that of Mr. Katz.  Accordingly, the court will award a rate of $350 per hour for the services rendered in this action by attorney Wilson.  With respect to attorney Murai, although he is recognized as a skilled lawyer with some level of experience, he is nonetheless significantly less experienced than both Mr. Katz and attorney Wilson.  Moreover, little of attorney Murai's experience is in the area of civil rights litigation.  Based on attorney Murai's level of skill, area of expertise, years of experience and performance, the court finds that a rate of $260 per hour for his services is consistent with the prevailing market rate in Sacramento for the services of a reasonably comparable civil rights attorney.  See, e.g., Deocampo, 2014 WL 788429, at *8 (finding $280 per hour to be the appropriate rate for a thirty-year attorney with

---

[16]  Although the order awarding attorney's fees in Jones was issued in 2011, it does not appear from his declaration submitted in support of plaintiffs' motion for attorney's fees that Mr. Katz has been awarded a higher hourly rate by a court since that decision was issued.

1   twenty-four years of civil rights litigation experience serving as second chair counsel); Knox v.

2   Chaing, No. 2:05-cv-2198 MCE CKD, 2013 WL 2434606, at *10 (E.D. Cal. June 5, 2013)

3   (finding that a rate of $260 per hour was a reasonable rate for an attorney in Sacramento market

4   with eleven years of litigation experience); Lehr, No. 2:07-cv-1565 MCE GGH, 2013 WL

5   1326546, at *8 (finding $260 per hour was the Sacramento market rate for civil rights attorney

6   with 7-10 years of experience); Jones, No. CIV S-09-1025 DAD, 2011 WL 3584332, at *9-10

7   (finding $250 per hour was the Sacramento market rate for a civil rights attorney with roughly ten

8   years of litigation experience); California Pro-Life Council, Inc. v Randolph, Civ. No. 2:00-1698

9   FCD GGH, 2008 WL 4453627, at *4 (E.D. Cal. Sept. 30, 2008) (finding the prevailing rate in

10  Sacramento for partners with over ten years of experience to range between $260 and $280 per

11  hour).

12          Plaintiffs' motion also seeks compensation for work performed by associate attorneys, at

13  claimed rates of between $225 and $500 per hour, paralegals, at claimed rates of $160 to $195 per

14  hour, and law clerks, at claimed rates of $125 to $160 per hour.  (Pls.' Mot. (Doc. No. 211) at 16.)

15  Defendants have not opposed the specific hourly rates sought by plaintiffs for these legal services.

16  However, the court finds that plaintiffs' motion fails to provide any support for any of the hourly

17  rate ranges requested.[17]  As noted above, the initial burden is on the applicant to produce

18  satisfactory evidence that the rates requested are in line with the market rate and meet the "skill

19  and experience" standard.  Blum, 465 U.S. at 895 n. 11; Gonzalez, 729 F.3d at 1206; Nadarajah,

20  569 F.3d at 916; Camacho, 523 F.3d at 978; L.H., 645 F. Supp.2d at 893.  Here, no such showing

21  has been made with respect to the rates claimed by plaintiff for legal services rendered by

22  associate attorneys, paralegals and law clerks.

23          Given this absence of evidence and in light of market rates for these services as most

24  recently determined by judges of this court, the undersigned concludes that in the Sacramento

25  market a reasonable rate for work performed by an associate attorney in a civil rights action such

26  ──────────────
27  [17]  Indeed, plaintiffs' motion for attorney's fees fails to even clearly identify those billing entries attributable to the time expended by associate attorneys, paralegals and law clerks.  The court, therefore, has combed through the billing records submitted and identified those entries as they

28  relate to the particular category of staff.

1   as this is $175 per hour.  See Deocampo, 2014 WL 788429, at *9 (finding that an appropriate rate

2   for an sixth year associate attorney practicing primarily in civil rights litigation for two years to

3   be $175 per hour); Joe Hand Promotions, Inc. v. Albright, No. CIV. 2:11-2260 WBS CMK, 2013

4   WL 4094403, at *3 (E.D. Cal. Aug. 12, 2013) ("The court's independent research shows that a

5   reasonable rate for associates working in this community is between $150 and $175 per hour.");

6   BroadMusic Inc. v. Antigua Cantina & Grill, LLC, Civ. No. 2:12-1196 KJM DAD, 2013 WL

7   224461, at *1 (E.D. Cal. May 21, 2013) (awarding an hourly rate of $175 for work performed by

8   an associate).  Though apparently subject to some disagreement among the judges of this court,

9   the undersigned finds in this case that reasonable Sacramento market rates for work performed by

10  paralegals to be $150 per hour and by law clerks to be $125 per hour.  Jones v. County of

11  Sacramento, No. CIV S-09-1025 DAD, 2011 WL 3584332, at *9 (E.D. Cal. Aug. 12, 2011)

12  ("[J]udges of this court have found $150 an hour to be a reasonable rate for the services of a

13  paralegal in similar civil rights litigation."); Beecham v. City of West Sacramento, No. Civ. S-07-

14  1115 JAM EFB, 2009 WL 3824793, at *4 (E.D. Cal. 2009) ("As for the market rates requested

15  for the work performed by the paralegals ($150 per hour) and law clerks ($125 per hour), the

16  Court finds the rates are reasonable."); but see Deocampo, 2014 WL 788429, at *9 (finding the

17  appropriate rate for paralegal time to be $75 per hour); Albright, 2013 WL 4094403, at *3 (same);

18  Friedman v. California State Emps. Ass'n, 2:00-101 WBS DAD, 2010 WL 2880148, at *4 (E.D.

19  Cal. July 21, 2010) ("[T]he paralegal rate favored in this district is $75 per hour.")

20          B.      HOURS EXPENDED

21          As also noted above, the attorney's fee applicant also bears the burden of establishing the

22  appropriate number of hours expended.  Hensley, 461 U.S. at 437; see also Carson, 470 F.3d at

23  891; Jadwin v. County of Kern, 767 F. Supp.2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant

24  bears the burden of documenting the appropriate hours expended in the litigation and must submit

25  evidence in support of those hours worked.").  The party opposing the fee application has the

26  burden of rebutting that evidence.  Camacho, 523 F.3d at 982; see also Toussaint, 826 F.2d at

27  904; Jadwin, 767 F.Supp.2d at 1100 ("The party opposing the fee application has a burden of

28  rebuttal that requires submission of evidence to the district court challenging the accuracy and

                                                        14

1   reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted

2   affidavits.")

3          Here, plaintiffs seek a total attorneys' fee award, including time expended litigating this

4   fees motion, of $692,870.75.  According to the billing records submitted in connection with

5   plaintiffs' motion, this fee request is based on a total of 2,088.15 hours of time expended in

6   connection with this civil rights action broken down as follows:  1,177.6 total hours expended by

7   attorney Garret Murai; 429.95 total hours expended by attorney Edwin Wilson; 115.2 hours

8   expended by associate attorneys; 335.9 hours expended by law clerks; and 29.5 hours expended

9   by paralegals.[18]  (Pls.' Mot., Murai Decl., Ex. B (Doc. No. 212-1) at 33; Pls.' Mot., Wilson Decl.,

10  Ex. B (Doc. No. 213-1) at 13; Pls.' Reply (Doc. No. 219) at 10-11; Pls.' Reply, Murai Decl., Ex.

11  A (Doc. No. 219-2) at 2; Pls.' Reply, Wilson Decl., Ex. A (Doc. No. 219-4) at 2.)

12         Asserting a number of individual objections, defendants argue that the number of attorney

13  hours for which plaintiffs' counsel seek compensation include time that was billed to this matter

14  ────────────────────

[18]  The court has added all of the time appearing in the individual billing records submitted by plaintiffs' counsel in support of their motion and arrived at a total of 1.9 hours less than the total time for which plaintiffs' counsel seeks compensation.  Although the court put forth considerable effort to reconcile this difference, and is unsure whether the error lies with counsel's or its own calculation, the court's task was made quite difficult by plaintiffs' counsel submission of essentially a single billing spreadsheet, organized by date, without any breakdown by individual biller or even by type of billing entry (attorney, paralegal, law clerk, etc.).  The bulk of plaintiffs' billing entries in support of their motion are found in Ex. B to the declaration of attorney Murai. (Doc. No. 212-1.)  Within that single document, however, are billing entries for attorneys Wilson and Murai, and other individuals identified only by name without reference to their position (associate, paralegal, law clerk, etc.).  Aside from those billing entries, the document provides only a sum total of hours expended on this case by counsels' firms and a total billable amount. Having painstakingly gone through this confusing document in order to separate out services rendered by each individual, it appears that attorney Wilson billed 195.1 hours of time, attorney Murai billed 1,118.4 hours of time, unidentified associate attorneys billed 115.2 hours of time, unidentified law clerks billed 335.9 hours of time and paralegals billed 29.5 hours of time. Thankfully, later billing records submitted by plaintiffs are much shorter and pertain only to attorneys Murai or Wilson.  Thus, it appears that attorney Murai spent an additional 59.2 hours on plaintiffs' motion for attorneys' fees (Doc. No. 219-2), and attorney Wilson spent an additional 222.05 hours litigating this action through trial, (Doc. No. 213-1) and an additional 12.8 hours on plaintiffs' motion for attorneys' fees.  (Doc. No. 219-4.)  The court's task was also made more difficult by defendants' puzzling objection raised at the July 12, 2013 hearing on this motion to attorney Murai's offer to submit to the court an electronic copy of their billing spreadsheet to aid in its calculations.  Thankfully, the total discrepancy between the amounts claimed and the court's own calculation is miniscule at less than 0.1%.

unreasonably.[19]  (Defs.' Opp.'n. (Doc. No. 218) at 12-13.)  In considering defendants' objections

the court is mindful of the Ninth Circuit admonition that, as a rule, "the court should defer to the

winning lawyer's professional judgment as to how much time he was required to spend on the

case."  Moreno, 534 F.3d at 1112.  Moreover, that general rule applies with particular force with

respect to a plaintiff's attorney in a civil rights action, who typically works on a contingency

basis, and therefore has little incentive to expend unnecessary hours in connection with the

litigation.  As the Ninth Circuit has also observed:

> Lawyers are not likely to spend unnecessary time on contingency
> fee cases in the hope of inflating their fees. The payoff is too
> uncertain, as to the result and the amount of the fee. It would
> therefore be the highly atypical civil rights case where plaintiff's
> lawyer engages in churning.  By and large, the court should defer to
> the winning lawyer's professional judgment as to how much time
> he was required to spend on the case; after all, he won, and might
> not have, had he been more of a slacker.

Nadarajah, 569 F.3d at 922 (quoting Moreno, 534 F.3d at 1112).  See also Deocampo, 2014 WL

788429, at *2; Blackwell v. Foley, 724 F.Supp.2d 1068, 1080 (N.D. Cal. 2010) ("[I]f anything, an

attorney working on contingency is less likely to expend unnecessary hours because the payoff is

too uncertain.")  With these principles in mind, below the court will address each of defendants'

objections.

First, defendants object that plaintiffs' counsel seek to be compensated for hours spent

litigating this action against the settling defendants, In-N-Out Burger and Marc Young.  (Id. at

12.)  In response, plaintiffs argue that aside from time spent dealing with counsel for In-N-Out

Burger "as it related to Plaintiffs' overall claims against each of the parties, all other fees were

excluded."  (Pls.' Reply (Doc. No. 219) at 7.)

---

[19]  Although defendants' assert multiple unique objections, they are in large part conclusory, unsupported and unfounded.  As noted above, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits."  Jadwin, 767 F.Supp.2d at 1100.  See also Camacho, 523 F.3d at 982; Toussaint, 826 F.2d at 904.  To the extent defendants have attempted to submit any evidence at all in support of their objections that evidence consists merely of copies the billing records of plaintiffs' counsel highlighted by defendants to indicate the entries to which they object.

1    Defendants have failed to cite a single specific example of attorney time reflected in

2    plaintiffs' fee application that was attributable solely to plaintiffs' efforts against settling

3    defendants In-N-Out Burger and Marc Young.  Nonetheless, the court has reviewed those billing

4    records in light of defendants' vague and general objection and has identified a few additional

5    hours of billed timed that should be excluded from plaintiffs' attorneys' fee award.  For example,

6    plaintiffs seek compensation time expended by attorney Wilson in "[c]onference with G Murai re

7    strategy for preparation of letter to In-N-Out Burger," (Murai Decl., Ex. B (Doc. No. 212-1) at 9),

8    to "[d]raft letter for In-N-Out Burger and conference with J Hillsman re potential value," (id. at

9    10), and to "[c]onference with G. Murai re status and strategy and demand to In-N-Out Burger."

10   (Id. at 16.)  Plaintiffs' also seek compensation for attorney Murai's time expended to "[p]repare

11   letter to In-N-Out Burger," (id. at 9), "[p]repare Plaintiffs' response to In-N-Out's request for

12   production of documents," (id. at 14), and "[m]eeting with W. Wilson regarding [In-N-Out

13   Burger's] Settlement."  (id. at 18.)  In total, the court finds that an additional 21.4 hours of

14   attorney time (12.5 hours attributable to attorney Wilson and 8.9 hours attributable to Mr. Murai)

15   should be deducted from any award of fees as solely attributable to plaintiffs' efforts litigating

16   this action against the settling defendants, In-N-Out Burger and Marc Young.[20]

17   Defendants also object to plaintiffs seeking compensation for 198 hours of time expended

18   by counsel prior to the filing of the complaint in this action.  (Defs.' Opp.'n (Doc. No. 219) at 8.)

19   Again, defendants merely refer generally to their six-page highlighted spreadsheet of various

20   billing entries and fail to cite any legal authority in support of their objection.

21   A prevailing party is entitled to compensation for attorney time "reasonably expended *on*

22   *the litigation*."  Webb v. Board of Educ. of Dyer County, 471 U.S. 234, 242 (1985) (emphasis in

23   original).  Time is reasonably expended on the litigation when it is "useful and of a type

---

[20]  Because this total is the summation of over two dozen individual, and often minor, billing
entries the court has not reproduced each specific entry and instead cited representative examples
of the types of billing entries that have been excluded as attributable solely to plaintiffs' efforts in
litigating this action against the settling defendants.  The court also notes, however, that plaintiffs'
counsel themselves excluded from their fee petition what they determined was $64,330.50 in
attorney's fees attributable by them to claims against the settling defendants or in connection with
the criminal charges filed against plaintiffs which were later dismissed.

1     ordinarily necessary to secure the final result obtained from the litigation." <u>Pennsylvania v.</u>

2     <u>Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 561 (1986) (citation and internal

3     quotations omitted).

4        Here, review of the six page spreadsheet of billing entries submitted by defendants reflects

5     that they are challenging hours attributed to plaintiffs' attorneys review of evidence, conducting

6     of legal research, strategizing, drafting the complaint, etc.  Having reviewed plaintiffs' counsels'

7     billing records as well as defendants' objections as indicated on their highlighted spreadsheet, the

8     court finds that the 198 hours billed by plaintiffs' counsel for hours expended prior to the filing of

9     the complaint were reasonably expended by counsel on behalf of their clients in this civil rights

10    action and, therefore, they will not be excluded from the attorneys' fee award.  <u>See</u> <u>Webb</u>, 471

11    U.S. at 243 ("Of course, some of the services performed before a lawsuit is formally commenced

12    by the filing of a complaint are performed 'on the litigation.'  Most obvious examples are the

13    drafting of the initial pleadings and the work associated with the development of the theory of the

14    case."); <u>see also</u> <u>Hutchinson ex rel. Julien v. Patrick</u>, 636 F.3d 1, 15 (1st Cir. 2011) (affirming the

15    award of fees in connection with time spent performing legal work prior to the commencement of

16    suit); <u>cf.</u> <u>Cullen v. Fliegner</u>, 18 F.3d 96, 105-06 (2nd Cir. 1994) ("Attorney's fees may also be

17    awarded for work done in a prior administrative proceeding which was 'both useful and of a type

18    ordinarily necessary to advance' the subsequent § 1988 civil rights litigation.").

19        Defendants next object to the number of hours expended on trial preparation for which

20    plaintiffs' counsel seeks compensation.  Specifically, defendants argue that plaintiffs are seeking

21    320 hours for time spent preparing in anticipation of the originally scheduled trial and another

22    346 hours for trial preparation after the trial date was continued, even though the continuance of

23    the trial date did not, according to defendants, require any additional preparation.  (Defs.' Opp.'n

24    (Doc. No. 218) at 12.)  Again, in posing this objection defendants simply cite generally to

25    multipage spreadsheets listing the disputed billing entries without any specific argument or

26    citation to authority.  Plaintiffs' counsel argue in response that preparation prior to the originally

27    scheduled trial date was spent primarily on the research and drafting of motions in limine, jury

28    instructions and jury verdicts, whereas the bulk of the time expended by them prior to the re-set

1  trial date was focused on preparing direct and cross-examinations of witnesses and other matters.

2  (Pls.' Reply (Doc. No. 219) at 8.)

3      The court has reviewed the billing statements submitted by plaintiffs' counsel in support

4  of their attorneys' fee motion and finds their argument on this point to be well founded.

5  Moreover, when a case is pending for several years as this one was, some degree of duplication

6  and updating of work is to be expected. <u>See</u> <u>Moreno</u>, 534 F.3d at 1114 (in such circumstances a

7  "lawyer needs to get up to speed with the research previously performed.")  Accordingly, the

8  court finds that the number of hours spent by plaintiffs' counsel in trial preparation for which they

9  seek to be compensated were neither duplicative nor unnecessary.  Because the hours objected to

10  by defendants appear to have been reasonably expended, they will not be excluded from the

11  attorneys' fee award in this case.

12      Defendants also object to plaintiffs' seeking compensation for 144 hours in time spent

13  drafting plaintiffs' motion for summary judgment and opposing defendants' motion for summary

14  judgment. (Defs.' Opp.'n (Doc. No. 218) at 12.)  As plaintiffs' correctly point out, because the

15  parties had filed cross-motions for summary judgment, plaintiffs' attorneys also had to prepare a

16  reply in support of their own motion for summary judgment.  (Pls' Reply (Doc. No. 219) at 8.)  In

17  this instance as well, the court has reviewed the billing statements submitted by plaintiffs' counsel

18  in support of their motion, as well as the parties' briefs filed in connection with the cross motions

19  for summary judgment, and finds that the hours billed by plaintiffs' counsel in connection with

20  the extensive cross-motions for summary judgment were reasonably expended.  Therefore, those

21  hours will also not be excluded from the fee award.

22      Defendants next object that plaintiffs "include entries with block billing in which the

23  segments of the block bill do not add up to the total block billed." (Defs.' Opp.'n (Doc. No. 218)

24  at 12.)  Defendants once again, however, fail to cite any evidence or even an amount of hours at

25  issue in raising this vague and conclusory objection.  Moreover, the court has reviewed the billing

26  records and finds that except where certain "narrative" entries may have inadvertently been cut-

27  off, they do not reflect block billing as that term is commonly understood but instead properly

28  provide an itemization of the time expended on each specific task.  <u>See</u> <u>Welch v. Metro. Life Ins.</u>

19

1  Co., 480 F.3d 942, 945 n. 2 (9th Cir. 2007) ("Block billing is the time-keeping method by which

2  each lawyer and legal assistant enters the total daily time spent working on a case, rather than

3  itemizing the time expended on specific tasks.")  Accordingly, the court rejects defendants'

4  objection based upon their claim of improper block billing.

5       In this same vein, defendants object to plaintiffs' "use of round numbers in their billing

6  [which] indicate that the 'billed' time is not a true reflection of the time spent but an estimate."

7  (Id.)  A cursory review of counsel's billing records submitted in support of their motion, however,

8  reveals that defendants' assertion is inaccurate.  Indeed, the alleged "evidence" offered by

9  defendants in support of this assertion disputes its basic premise since those spreadsheets

10  submitted by defendants reveal numerous billing entries down to the tenth of an hour.  (Ex. E to

11  Gilbert Decl. (Doc. No. 218-6)).

12       Next, defendants object to "542 hours spent for interoffice meetings" which their counsel

13  theorizes was "possibly" expended so that attorney Murai could be "taught to try a civil rights

14  case . . . ."  (Id. at 13.)  However, aside from a general citation to a highlighted spreadsheet they

15  submitted, defendants offer no evidence or authority in support of their objection.  Despite the

16  sarcastic tone and conclusory nature of defendants' objection, the court at first blush was

17  concerned that this large number of hours, which defendants contend appeared to be attributed

18  solely to interoffice conferences, may well be excessive.  However, upon reviewing the billing

19  entries objected to by defendants, the court agrees with the position taken by plaintiffs in reply

20  and finds that many of the objected to entries clearly do not relate to interoffice conferencing but

21  rather to more substantive tasks such as drafting documents and pleading, preparing witnesses,

22  meeting with and writing to clients, legal research and preparing for hearings.

23       Nonetheless, the court has reviewed all of the objected to entries and concludes that 6.7

24  hours of attorney Wilson's claimed time and 1.9 hours of attorney Murai's time was excessive

25  since it is attributed on the billing records merely to conferencing with one another with respect to

26  "status," "strategy," "trial preparation," or the like with no further explanation.

27       As noted above, a prevailing party is entitled to compensation for attorney time

28  "reasonably expended on the litigation."  Webb, 471 U.S. at 242.  Based upon its review of the

1   billing records submitted by plaintiffs' counsel the court finds that with the exception of the 6.7

2   and 1.9 hours noted, all of the attorney time claimed by plaintiffs' counsel was reasonably

3   expended on this litigation.

4           Defendants also object to plaintiffs' counsel seeking to be compensated for 7.6 hours of

5   attorney time purportedly related to a motion heard by the court on November 21, 2011.

6   Specifically, defendants argue that the court's November 21, 2011 calendar began at 9:00 a.m.

7   and that the court issued a minute order after the hearing of that motion at 10:39 a.m., meaning

8   that the court hearing could have lasted no more than one hour and thirty-nine minutes in its

9   entirety.  (Defs.' Opp.'n (Doc. No. 218) at 13.)  Plaintiffs explain in their reply, however, that the

10  7.9 hours attributed by them to that hearing included travel time to and from the hearing of 4 to 5

11  hours plus one-half of an hour in  preparation time.  (Pls.' Reply (Doc. No. 219) at 9.)

12          "The Ninth Circuit has established that travel time and clerical tasks are reasonably

13  compensated at normal hourly rates if such is the custom in the relevant legal market."  Blackwell

14  v. Foley, 724 F.Supp.2d 1068, 1080 (N.D. Cal. 2010) (quotation omitted).  See also Nadarajah,

15  569 F.3d at 924 (finding that attorney travel time was reasonably expended and should be

16  included in plaintiff's attorney fee award); Davis v. City and County of San Francisco, 976 F.2d

17  1536, 1543 (9th Cir. 1992) (affirming the inclusion of attorneys' fees for travel time in a fee

18  award), vacated on other grounds by, 984 F.2d 345 (9th Cir. 1993); Davis v. Mason County, 927

19  F.2d 1473, 1487-88 (9th Cir. 1991), superseded by statute on other grounds (affirming the lower

20  court's award of travel expenses as either attorney's fees or costs because they are normally billed

21  to fee-paying clients should be taxed under § 1988); Gauchat-Hargis v. Forest River, Inc., No.

22  2:11-cv-2737 KJM EFB, 2013 WL 4828594, at *8 (E.D. Cal. Sept. 9, 2013) ("Thus, so long as

23  the amount of time spent traveling is reasonable, and the meeting or event to which the attorney is

24  traveling is necessary to the case, the court will award compensation of travel time at the

25  attorney's full hourly rate.");  United States v. City and County of San Francisco, 748 F. Supp.

26  /////

27  /////

28  /////

1   1416, 1422 (N.D. Cal. 1990) ("Reasonable attorneys' fees include reasonable travel time

2   compensated at the full hourly rate.")[21]

3        Accordingly, the court finds that the attorney travel time hours objected to by defendants

4   were reasonably expended by plaintiffs' counsel on this litigation and will, therefore, will not be

5   deducted from the attorneys' fee calculation.

6        Defendants also object to the number of hours plaintiffs' counsel seek in compensation for

7   the attorney and support time spent during the trial of this civil rights action.  In this regard,

8   defendants note that plaintiffs are requesting between 14.7 and 15.9 hours of attorney time for

9   each day of trial and argue that this amount of hours is excessive in light of the fact that each trial

10  day consumed only approximately eight hours of actual courtroom time.  (Defs.' Opp.'n (Doc.

11  No. 218) at 13.)  Again, defendants do not support their argument with any citation to evidence or

12  legal authority.  In opposition, plaintiffs argue that while each day of trial may have consumed

13  only eight hours of court time, counsel was required thereafter to meet with witnesses, review

14  their trial notes, prepare for direct and cross-examination of the upcoming witnesses, as well as

15  preparation with respect to closing arguments, jury instructions and verdict forms.[22]

16       Plaintiffs' argument on this point is reasonable and the court finds defendants' superficial

17  argument to be unpersuasive.  Accordingly, the court finds that the hours of attorney time claimed

18  _____

19  [21]  The court notes that in this district travel time of attorneys has customarily been compensated
    in attorney's fees awards at the attorney's normal hourly rate.  See Gauchat-Hargis, 2013 WL

20  4828594, at *8 (awarding fees in connection with 7.9 hours of attorney travel time between San
    Francisco and Sacramento); Jones v. County of Sacramento, 2011 WL 3584332, at *9 (awarding

21  fees on 3 hours of attorney time for travel from Sacramento to San Jose and back); Jones v.
    McGill, No. 1:08-CV00396-LJO-DLB, 2009 WL 1862457 at *3 (E.D. Cal. June 29, 2009)

22  (awarding as "reasonable" fees for 15 hours of attorney travel time for meetings with experts and
    witnesses); Davis v. Sundance Apartments, No. CIV. S-07-1922 FCD GGH, 2008 WL 3166479

23  at *5 (E.D. Cal. Aug. 5, 2008) (awarding fees for 6 hours of attorney travel time because it "was
    essential to the case, and thus, reasonable."); Estate of Kligge v. Fidelity Mortg. of Cal., No. CIV

24  F 05–1519 AWI DLB, 2008 WL 171031 at *3 (E.D. Cal. Jan.18, 2008) (awarding fees for 15.8
    hours of attorney travel time); Chapman v. Pier 1 Imports, Inc., No. CIV. S-04-1339 LKK/DAD,

25  2007 WL 2462084 at *4 (E.D. Cal. Aug.24, 2007) (awarding 18 hours of attorneys' fees
    attributable to travel time from counsel's office in Chico to Sacramento); Cohen v. Williams, No.

26  CIV. S-06-605 FCD/DAD, 2007 WL 174329, at *4 (E.D. Cal. Jan. 22, 2007) (awarding fees for

27  1.5 hours of travel time from an attorney's office to an inspection site).

28  [22]  Counsel also presumably incurred some travel time in connection with the trial of this case.

1    by plaintiffs' counsel to have been expended in connection with the trial of this action to be

2    reasonable.  Accordingly, the court will not reduce the number of hours attributed by plaintiffs'

3    counsel to the trial of this case in calculating a reasonable attorneys' fee award.

4          Finally, defendants object to 66 hours of time reportedly expended by plaintiffs' counsel

5    on plaintiffs' motion for attorney fees.  (Defs.' Opp.'n (Doc. No. 218) at 13.)  Of course, a

6    plaintiff may seek reasonable attorneys' fees for time spent obtaining those fees.  See In re

7    Southern California Sunbelt Developers, Inc., 608 F.3d 456, 463 (9th Cir. 2010); Camacho, 523

8    F.3d at 981; Anderson v. Director, Office of Workers Compensation Programs, 91 F.3d 1322,

9    1325 (9th Cir. 1996); Bernardi v. Yeutter, 951 F.2d 971, 976 (9th Cir.1991); In re Nucorp Energy,

10   Inc., 764 F.2d 665, 659-60 (9th Cir. 1985).  "Such compensation must be included in calculating

11   a reasonable fee because uncompensated time spent on petitioning for a fee automatically

12   diminishes the value of the fee eventually received."  Anderson, 91 F.3d at 1325.  "However, a

13   request for attorney's fees should not result in a second major litigation[.]"  Camacho, 523 F.3d at

14   981.

15         Here, defendants assert that 66 hours of time reportedly expended by plaintiffs' counsel

16   on their motion for attorneys' fees is excessive.  Defendants again, however, do not cite any

17   authority in support of this assertion.  It is clear to the court that 66 hours of time expended on the

18   motion for attorneys' fees here was reasonable, particularly in light of the complexity of this case

19   and the broad and far-reaching opposition to plaintiff's attorneys' fee motion filed by counsel for

20   defendants.  See Jones v. County of Sacramento, 2011 WL 3584332, at *21 (awarding attorney's

21   fees for 76.5 hours of time spent on plaintiff's attorneys' fees motion in a civil rights action);

22   Beecham, 2009 WL 3824793 at *6 (awarding attorney fees for roughly 87 hours of time spent on

23   an attorneys' fees motion in a similar action).

24         Accordingly, the court finds that the 66 hours of attorney time were reasonably expended

25   in connection with plaintiffs' litigation of their fees motion.

26         C.  LODESTAR

27         Applying the analysis set forth above to plaintiffs' motion for attorneys' fees, plaintiffs

28   are entitled to a total of:  (1) 1166.8 hours at a rate of $260 per hour ($303,368.00) for the time

23

expended by attorney Murai; (2) 410.75 hours at a rate of $350 per hour ($143,762.50) for the time expended by attorney Wilson; (3) 115.2 hours of associate attorney time at a rate of $175 per hour ($20,160.00); (4) 29.5 hours of time expended by paralegals at a rate of $150 per hour ($4,425.00); and (5) 335.9 hours of time expended by law clerks at a rate of $125 per hour ($41,987.50), for a total lodestar of $513,703.

1) Adjustment

In their motion, counsel for plaintiffs asserts that they are entitled to an award of the full lodestar amount.  (Pls.' Mot. (Doc. No. 211) at 22-25.)  Conversely, although providing little argument and proffering no alternative calculation, defendants argue in conclusory fashion that the lodestar amount should be reduced.[23]  (Defs.' Opp.'n (Doc. No. 218) at 14-18.)

As observed above, the lodestar figure is presumptively reasonable.  Dague, 505 U.S. at 562; Crawford, 586 F.3d at 1149.  The Ninth Circuit has advised that "[a]fter computing the lodestar figure, district courts may adjust that figure pursuant to a 'variety of factors.'"  Gonzalez, 729 F.3d at 1209 (citing Moreno, 534 F.3d at 1111).  However, any adjustments to the lodestar amount must be carefully tailored and based only on those few factors relevant to the reasonableness determination and only to the extent a factor has not already been subsumed within the lodestar calculation itself.  Gonzalez, 729 F.3d at 1209 & n.11 (citing Moreno, 534 F.3d at 1111); Camacho, 523 F.3d at 982 (citing Kerr, 526 F.2d at 70); Ballen, 466 F.3d at 746.  Here, the court has not yet considered either the results obtained by plaintiffs or attorneys' fees

/////

/////

/////

_____

[23]  In opposing the pending motion defendants cite Local Rule 293, which identifies the Kerr factors.  However, the court has already considered many of those factors in reaching the lodestar and will now consider only the remaining relevant factors, including the value of the rights involved, the results obtained and awards in similar actions.  Of course, "[t]he court need not consider all . . . factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award."  Cairns v. Franklin Mint Co., 292 F.3d 1139, 1158 (9th Cir. 2002) (quoting Kessler v. Assocs. Fin. Servs. Co. of Hawaii, 639 F.2d 498, 500 n. 1 (9th Cir. 1981)).

awards in similar actions in calculating the lodestar and will therefore now take those factors into consideration in determining whether an adjustment is appropriate.[24]

It has been recognized that "attorney's fees awarded under 42 U.S.C. § 1988 must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009). See also Hensley, 461 U.S. at 44 ("[T]he extent of a plaintiff's success is a crucial factor for determining the proper amount of an award of attorney's fees under 42 U.S. § 1988."); A.D. v. California Highway Patrol, 712 F. 3d 446, 460 (9th Cir. 2013). In considering an adjustment to the lodestar on this basis, the court must first determine whether "the plaintiff[s] fail[ed] to prevail on claims that were unrelated to the claims on which [they] succeeded[.]" Hensley, 461 F.3d at 434. See also A.D., 712 F. 3d at 460; Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003). "[C]laims are unrelated if the successful and unsuccessful claims are distinctly different both legally and factually; claims are related, however, if they involve a common core of facts or are based on related legal theories." Dang v. Cross, 422 F.3d 800, 813 (9th Cir. 2005). See also Webb 330 F.3d at 1168. If the successful claims are unrelated to the unsuccessful claims, "the hours expended on the unsuccessful claims should not be included in the fee award." Dang, 422 F.3d at 813. Here, however, all of plaintiffs' claims arise from a single incident and out of a "common core of facts." See Id. at 813; Barnes v. AT&T Pension Benefit Plan, 963 F. Supp.2d 950, 969 & n.7 (N.D. Cal. 2013). Under such circumstances, the court may "not attempt to divide the request for attorney's fees on a claim-by-

---

[24] Some Ninth Circuit panels have suggested that it is a "disfavored" practice to consider the results obtained by plaintiffs in determining whether to adjust the lodestar, as opposed to considering that factor in determining the reasonable hourly rate and reasonable number of hours components. See Morales, 96 F.3d at 364, n.9 (citing Corder, 947 F.2d at 378). However, other panels of the Ninth Circuit have endorsed the approach of first determining the lodestar and then adjusting that figure based upon consideration of any of the twelve Kerr factors not already taken into account. See Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1033, n.11 (9th Cir. 2012); Camacho, 523 F.3d at 982 & n. 1; Ballen, 466 F.3d at 746 ("After making that computation, courts then assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve factors.") In any event, either approach passes muster so long as the court considers a factor only once. Morales, 96 F.3d at 364, n.9; Corder, 947 F.2d at 378.

1   claim basis" but must proceed to the second part of the analysis and focus on the significance of

2   the overall relief obtained by [plaintiffs] in relation to the hours reasonably expended on the

3   litigation." McCown, 565 F.3d at 1103.  See also Barnes, 963 F. Supp.2d at 969 & n.7.

4          The court now turns to that second part of the analysis.  It must do so, however, while

5   recognizing that in determining appropriate attorneys' fees in actions involving only partial

6   success by the prevailing party, the Supreme Court has uniformly rejected application of strict

7   proportionality or simple arithmetic proration.  City of Riverside v. Rivera, 477 U.S. 561, 574

8   (1986) ("We reject the proposition that fee awards under § 1988 should necessarily be

9   proportionate to the amount of damages a civil rights plaintiff actually recovers."); Hensley, 461

10  U.S. at 435 n. 11 ("We agree with the District Court's rejection of a mathematical approach

11  comparing the total number of issues in the case with those actually prevailed upon.") (internal

12  quotation marks omitted); McCown, 565 F.3d at 1103 ("[T]he Supreme Court has disavowed a

13  test of strict proportionality."); see also McGinnis v. Kentucky Fried Chicken, 51 F.3d 805, 808

14  (9th Cir. 1995) (rejecting arithmetic proration of the lodestar based upon percentage of claims

15  upon which the plaintiff prevailed because that proposition "makes no practical sense").

16         Here, plaintiffs initially brought far more claims then the one constitutional claim upon

17  which each of them ultimately prevailed at trial.  Setting aside plaintiffs' claims against the

18  settling defendants, their complaint alleged six causes of action against multiple defendants and

19  yet they ultimately obtained a verdict in their favor on only their Fourth Amendment violation

20  claim for arrest without probable cause against defendant McDowell.  As has been recognized,

21  "[i]f the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only

22  'partial or limited success' was obtained, full compensation may be excessive."  Thorne v. City of

23  El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986) (quoting Hensley, 461 U.S. at 435.)  See also

24  McCown, 565 F.3d at 1104-05; Webb, 330 F.3d at 1169 ("A discretionary reduction to reflect

25  that kind of limited success is appropriate."); Schwarz v. Secretary of Health and Human

26  Services, 73 F.3d 895, 902 (9th Cir. 1995).  The limited nature of the success obtained by

27  /////

28  /////

1   plaintiffs in this case must be taken into account and the court concludes that consideration of that

2   factor justifies some downward adjustment to the lodestar.[25]

3       Another of the <u>Kerr</u> factors to be considered in determining whether an adjustment to the

4   lodestar is appropriate is attorneys' fee awards rendered in similar cases.  <u>Kerr</u>, 526 F.2d at 70.

5   Below the court will review awards, including adjustments to the lodestar, in similar cases

6   brought in this court.

7       <u>Deocampo v. Potts</u> was a civil rights action tried in this court in which the three plaintiffs

8   alleged that the three defendant police officers had used excessive force in arresting them.  At

9   trial, the jury returned a verdict in favor of only one of the plaintiffs and as to only two of the

10  three defendants.  2014 WL 788429, at *11.  Defense verdicts were rendered with respect to the

11  claims of the other two plaintiffs.  The jury also returned defense verdicts on all of plaintiffs' state

12  law claims.  <u>Id</u>.  The one prevailing plaintiff was awarded $50,000 in damages by the jury despite

13  having unsuccessfully sought $300,000 in general damages plus special and punitive damages.

14  <u>Id</u>.  In light of these results obtained by the plaintiffs the court applied a 25% downward

15  adjustment to the lodestar in awarding total attorneys' fees, including fees litigating the fees

16  motion, of $275,871.05.  <u>Id</u>. at 11-13.

17       In <u>Jones v. City of Sacramento</u>, a §1983 case tried before the undersigned involving

18  claims of the excessive use of force by deputies, the plaintiff prevailed against all five defendant

19  deputies on one of his two constitutional claims.  2011 WL 3584332, at *18.  In addition, the

20  plaintiff succeeded in obtaining a jury verdict that the conduct of each of the deputies was

21  malicious, oppressive or in reckless disregard of plaintiff's rights.  <u>Id</u>.  However, the jury in that

---

25  "At the heart of this inquiry is whether Plaintiff's accomplishments . . . justify the fee amount requested."  <u>Thomas v. City of Tacoma</u>, 410 F.3d 644, 649 (9th Cir. 2005) (quoting <u>Thorne</u>, 802 F.2d at 1142).  <u>See also</u> <u>Fox v. Vance</u>, ___U.S.___, ___, 131 S. Ct. 2205, 2217 (2011) ("But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."); <u>Forestkeeper v. U.S. Forest Service</u>, No. CV F 09-392 LJO JLT, 2011 WL 2946176 at *8 (E.D. Cal. July 21, 2011) (There is no precise rule or formula for making these determinations . . . .  The court necessarily has discretion in making this equitable judgment.") (quoting <u>Aguirre v. Los Angeles Unified School Dist.</u>, 461 F.3d 1114, 1121 (9th Cir. 2006)).

1    case awarded the plaintiff $31,000 in damages despite counsel for plaintiff's argument to the jury

2    that they award $1,470,539.81 in damages.  Id., at *17.[26]  Moreover, the jury declined to award

3    punitive damages to plaintiff despite its finding that the defendants acted with malice, oppression

4    or in reckless disregard of plaintiff's rights.  Id.  In ruling on plaintiff's motion for attorneys' fees

5    following that verdict, the undersigned applied a 25% downward adjustment in awarding total

6    attorneys' fees of $273,622.50 in light of the results obtained by plaintiff.  (Id. at 19)

7        In Beecham, another § 1983 case discussed above which was tried in this district, the jury

8    returned a verdict for plaintiffs on their claims of the excessive use of force and false arrest and

9    awarded a total of $33,400 in damages to the two plaintiffs.  2009 WL 3824793 at *1.  In closing

10   arguments plaintiffs' counsel had asked the jury to award $1.8 million in damages.  (Id. at *5.)

11   The assigned District Judge in Beecham applied a 50% downward adjustment to the lodestar

12   amount in awarding total attorneys' fees and costs of $291,732.80.  (Id.)  In doing so the court

13   noted that "there was a large disparity in the amount of damages awarded as compared to the

14   amount sought by Plaintiffs at trial."  (Id.)

15       In Jones v. McGill, a civil rights action brought pursuant to § 1983 in the Fresno Division

16   of this court, plaintiff had sought a total award of $15,200,000 in damages on multiple claims

17   against eight defendants.  2009 WL 1862457 at *5.  Following trial the jury found in favor of the

18   plaintiff on a single excessive use of force claim as to only one of the named defendants and

19   awarded plaintiff only $9,900 in damages.  Id. at *1.  In considering the attorneys' fees motion

20   after trial the court calculated an unadjusted lodestar amount of $83,360 but adjusted plaintiff's

21   attorneys' fees award downward to $20,000 in light of the result obtained.  (Id. at *5) ("Mr.

22   Jones' "victory clearly fell short of his goal; therefore, it is unreasonable to grant his attorneys

23   more than a comparable portion of the fees and costs requested.")

24       Here, plaintiffs did not prevail on their claim under California Civil Code § 52.1.

25   Moreover, plaintiff Sanders failed to prevail on her excessive use of force claim against defendant

26   _____

27   [26]  Unlike in many of the similar civil rights actions tried in this court, plaintiffs in the present
     case made no specific demand for damages in an amount certain in their complaint, nor did
     plaintiffs' trial counsel argue to the jury that they should award any specific amount in damages

28   for the violation(s) of plaintiffs' constitutional and/or statutory rights as determined by the jury.

1    Lt. Crane.  However, all three of the plaintiffs did obtain a jury verdict in their favor with respect

2    to their claim that their rights under the Fourth Amendment were violated when they were falsely

3    arrested without probable cause to do so.  Nonetheless, even in returning that verdict in plaintiffs'

4    favor, the jury declined to find that the conduct of any of the defendants with respect to the

5    incident in question was malicious, oppressive or in reckless disregard of plaintiffs' rights.

6    Finally, the three plaintiffs were awarded a total of merely $12,150 in damages with respect to the

7    violation of their Fourth Amendment rights found by the jury.[27]  Under these circumstances,

8    plaintiffs "certainly cannot feel completely satisfied that their rights were vindicated."  Beecham,

9    2009 WL 3824793, at *5.

10          At the same time, plaintiffs' success in the present case cannot be measured solely by the

11   amount of the jury's verdict.  As the undersigned has previously noted in a similar setting:

12               [A]lthough plaintiff did not prevail on the sobriety cell aspect of his
             excessive use of force claim and fell far short of his goal with
13               respect to the damages awarded, he nonetheless achieved far more
             than mere monetary success.  See City of Riverside v. Rivera, 477
14               U.S. at 572; McCown, 565 F.3d at 1105 ("The Supreme Court has
             likewise indicated that when a decision has 'served the public
15               interest by vindicating important constitutional rights' an award of
             attorney's fees that is disproportionate to the actual damages may
16               be appropriate."); Morales, 96 F.3d at 365 ("[I]n determining a
             reasonable fee award . . . the district court should consider not only
17               the monetary results but also the significant nonmonetary results
             achieved for [plaintiff] and other members of society.").  This is
18               such a case.

19               As a result of plaintiff's lawsuit, a jury found by a preponderance of
             the evidence that five law enforcement officers engaged in the
20               excessive use of force in violation of plaintiff's constitutional
             rights. The jury also found that the conduct of each officer was
21               malicious, oppressive or in reckless disregard of plaintiff's rights.
             Achieving such a verdict is no easy task and obtaining the latter
22               finding by the jury is even more difficult.  Moreover, such verdicts
             are significant in that they represent a determination by citizens of
23               this district that the defendant law enforcement officers' conduct in
             this instance was prohibited by the U.S. Constitution. The court
24               trusts that the defendants, and those in their Department, will take
             heed of the verdict and adjust their future conduct accordingly.  In
25               this regard, plaintiff's successful lawsuit achieved a significant
             nonmonetary result "because successful suits act as a deterrent to

26

_____

27   [27]  Nonetheless, this was not a nominal damages award and thus those decisions addressing
     attorney's fees in cases involving the award of only nominal damages are inapplicable here.  See
28   Morales, 96 F.3d at 363 & n.6.

law enforcement and serve the public purpose of helping to protect the plaintiff and persons like him from being subjected to similar unlawful treatment in the future." Mendez v. County of San Bernardino, 540 F.3d 1109, 1128 (9th Cir. 2008) (internal quotation and citation omitted).  See also Guy v. City of San Diego, 608 F.3d 582, 589 (9th Cir. 2010) ("[W]e conclude that a fee award serves a purpose beneficial to society by encouraging the City of San Diego to ensure that all of its police officers are well trained to avoid the use of excessive force, even when they confront a person whose conduct has generated the need for police assistance.")

Jones, 2011 WL 3584332, at *18.  See also Gonzalez, 729 F.3d at 1210 ("Attorneys who 'win[ ] a civil rights claim' not only benefit their client in terms of the amount of money they recover, 'they also confer benefits other throughout society' by, for example, ending institutional civil rights abuses or clarifying standards of constitutional conduct."); McCown v. City of Fontana, 464 Fed. Appx. 577, 579 (9th Cir. 2011) (Finding that the district court did not abuse its discretion by concluding that the plaintiff's civil rights suit imparted a substantial public benefit by deterring future unconstitutional conduct by law enforcement officers and noting "[t]he $20,000.00 in damages awarded to McCown is not de minimis and our precedent supports the district court's deterrence conclusion.")[28]; Morales, 96 F.3d at 364 ("Because it assessed [$17,500 in] damages against the defendants, the verdict established a deterrent to the City, its law enforcement officials and others who establish and implement official policies governing arrests of citizens."); Corder, 947 F.2d at 377 ("'Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large . . . .'")

Although the three plaintiffs in this action were not successful on all of their claims, as a result of plaintiffs' pursuit of this civil rights action citizens of this district who served on the jury found that a defendant law enforcement officer's conduct was in violation of the U.S. Constitution.   The court trusts that the defendants, and those in their Department, will take heed of the verdict and adjust their future conduct accordingly.

/////

---

[28]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    Having considered all of the relevant factors and for the reasons set forth above, the court

2    concludes that a 40% downward adjustment to the lodestar is appropriate in this case in light of

3    the somewhat limited results obtained by plaintiffs' counsel and attorney fee awards in similar

4    cases.  This conclusion results in an adjusted lodestar of $308,221.80 and attorneys' fees in that

5    amount will be awarded to plaintiffs' attorneys pursuant to 42 U.S.C. § 1988.

6                                                    CONCLUSION

7    Accordingly, IT IS HEREBY ORDERED that:

8    1.  Plaintiffs' May 31, 2013 motion for attorneys' fees (Doc. No. 211) is granted in part;

9    and

10    2.  Plaintiffs are awarded a total of $308,221.80 in attorneys' fees.

11    Dated:  March 31, 2014

12

13    _____
      DALE A. DROZD

14    UNITED STATES MAGISTRATE JUDGE

15    DAD:6
      Ddad1\orders.consent.hall0508.attyfees.ord.docx

16

17

18

19

20

21

22

23

24

25

26

27

28